John C. ROBERTS, M.D.,
Appellant–Plaintiff,

v.

COMMUNITY HOSPITALS OF INDIANA, INC., Appellee–
Defendant.

No. 49A02–0701–CV–17.

Court of Appeals of Indiana.

Dec. 12, 2007.

---

Denise K. Larue, Meghan U. Lehner, Indianapolis, IN, Attorneys for Appellant.

Matthew S. Effland, Brandon M. Shelton, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Plaintiff, Dr. John C. Roberts, M.D. (Roberts), appeals the trial court's award of judgment in favor of Appellee–Defendant, Community Hospitals of Indiana, Inc. (Community).

We reverse and remand for further proceedings.

### ISSUES

Roberts presents two issues for our review:

(1) Whether the trial court erred when it consolidated the preliminary injunction hearing with trial on the merits without notice; and

(2) Whether the evidence presented at the preliminary injunction hearing supported the trial court's order in favor of Community.

### FACTS AND PROCEDURAL HISTORY

On July 1, 2004, Roberts started a residency with Community as a first-year resident after being released from another residency program. Community's residency program is three years and is governed by three separate yearly contracts: PGY–I; PGY–II; and PGY–III. There is no guarantee that a resident who completes a full year contract will be offered acceptance into to the next year's program.

### I. Roberts' First Year

On November 13 and 14, 2004, Roberts missed an all day required residency retreat without providing notice of his absence in advance. Roberts was disciplined for the absence by the loss of a vacation day as prescribed by his first-year residency contract.

Following this absence, on November 30, 2004, Roberts attended a meeting with Community's residency program director Dr. H. Clifton Knight (Dr. Knight) and Robert's advisor Dr. Daniel Raines (Dr. Raines). During this meeting, the doctors discussed issues involving prioritizing assignments and efficiency. Additionally, Roberts acknowledged that he had ongoing problems, and promised to work harder to meet the program's expectations.

On March 31, 2005, Roberts was placed on a performance improvement plan to improve his (1) on-call performance; (2) ongoing problems with punctuality and tardiness; and (3) lack of efficiency. This was the only performance improvement plan that Roberts received while working for Community.

### II. Roberts' Second Year

#### a. Policies and Procedures

Roberts was offered and accepted a second-year residency governed by a PGY–II contract, which provided in part:

§ 4.1(a) Hospital may terminate this Agreement if:

(i) The physician shall fail to carry out the terms and conditions specified herein, in which case the Hospital will provide the Physician thirty (30) days advance notice of such termination, which includes providing the Physician the opportunity to discuss freely any differences, dissatisfactions or grievances that may exist.

(ii) The Physician continues to fail or is unable to complete or carry out the expectations and obligations specified herein for any reason, including injury or illness.

\* \* \*

§ 4.4 Hospital reserves the right to request immediate termination of Physician in any one or more of the following events:

\* \* \*

(v) Hospital reasonably determines that Physician failed to provide services consistent with Hospital's requirements;

(vi) Physician's clinical privileges granted by the medical staff are restricted, limited, revoked, or terminated. . . .

(x) The occurrence of any event which constitutes grounds for termination of physician under Hospital's disciplinary policy.

(Appellant's Appendix pp. 39, 42).

The PGY–II contract also affords Roberts the protections of due process by adopting the policies and procedures of the Family Practice Resident Program. The Family Practice Resident Program provides for progressive disciplinary actions.

Residents are also subject to the Community Health Network Disciplinary Action Policy for standard non-physician employees. The disciplinary action policy separates offenses into three types: minor, major, and intolerable. Discipline for a resident's first major offense can include a 1–3 day suspension. A second major offense can include up to five days of suspension, and anything after that can result in termination. For intolerable offenses immediate discharge is permissible. Additionally, the policy allows a resident supervisor to accelerate discipline when appropriate.

b. *Roberts' Performance*[1]

On August 11, 2005, Dr. Raines met with Roberts and discussed the fact that Roberts had not yet completed more than 200 patient charts. On August 29, 2005, Dr. Rains had another meeting with Roberts, primarily addressing the persistence of incomplete patient charts, but also discussing Roberts' tardiness and office efficiency as well. On September 19, 2005, Dr. Rains again met with Roberts to address incomplete patient charts and a self-evaluation form, which had been requested on August 11th, but never turned in. At this meeting, Dr. Rains gave Roberts a written warning that he would not be allowed to start his next rotation until his charts and other delinquent items were completed.

Despite getting nearly caught up on charts by the end of September, as of November 7, 2005, Roberts had a backlog of at least 130 charts. Dr. Rains met with Roberts two days later, on November 9th, to inform Roberts he would have to be suspended to catch up with paper work if the situation persisted. Dr. Knight followed up with a written warning on November 22nd explaining that he wanted to meet with Roberts on December 6th, and

1. The parties present to us extensive facts concerning Roberts' second year residency performance, which we choose to abridge for the sake of brevity.

that he risked suspension without pay if his charts were not up to date at that time.

On November 29, 2005, one week prior to Roberts' scheduled meeting with Dr. Knight, Rose Popovich (Popovich), the Practice Administrator for Community suspended Roberts for being delinquent on patient charting. Popovich informed Roberts in writing that his suspension violated the terms of his contract with Community and could result in his termination.

By December 6th, Roberts had caught up with his backlog of patient charts and at the meeting with Dr. Knight, Roberts claimed that his suspension was an "eye opener." (Appellee's Supplemental App. p. 151). At the close of the meeting, Dr. Knight informed Roberts that any further behavior that could result in suspension would result in immediate termination from the residency program.

On December 17, 2005, Dr. Rachel Schokley, the Chief Resident at the time, sent an e-mail to all residents in the Family Medicine Residency Program identifying a program-wide problem among residents regarding delinquent medical charts. Roberts is unaware of any other residents who were disciplined for delinquent charts.

In February 2006, while Roberts was working in his general surgical rotation, his preceptor was Dr. Ronald D. Baughman (Dr. Baughman). During this month, Roberts failed to attend the first three morning surgery rotations. Dr. Knight investigated Roberts attendance during his surgical rotation and determined that he had unexcused absences which were major infractions of Community's disciplinary policy. On March 10, 2006, Roberts was terminated from Community's Family Medicine Residency Program for his history of unprofessional behavior. After his termination, Roberts contacted Dr. Baughman and asked him to write a letter to Dr. Knight regarding his performance during the surgical rotation, but did not tell Dr. Baughman that he had been terminated. Dr. Baughman sent a letter to Dr. Knight, which spoke favorably of Roberts performance, and did not characterize his absences as unexcused.

On May 31, 2006, Roberts filed his complaint, and also filed motions for a preliminary injunction and a temporary restraining order. On June 5, 2006, a hearing was held on Robert's Motion for Temporary Restraining Order, and the trial court denied that motion on June 22, 2006. On August 1, 2006, a hearing was held on Roberts' Motion for Preliminary Injunction. On August 30, 2006, the trial court issued its Order Denying Plaintiff's Application for Preliminary Injunction and Entry of Final Judgment Pursuant to Indiana Trial Rule 65(A)(2). On September 29, 2006, Roberts filed a Motion to Correct Errors. On December 5, 2006, hearing was held the on Motion to Correct Errors and the trial court issued an order denying that motion on December 7, 2006.

Roberts now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Consolidation*

Roberts contends that the trial court erred when it consolidated the preliminary injunction hearing with trial on the merits without notice. Specifically, Roberts argues that since he was provided no prior notice of the consolidation, he was unable to conduct necessary discovery or present valuable witnesses, including an expert witness regarding the custom and usage concerning the performance of residents and hospitals under medical residency contracts. Thus, Roberts contends he was prejudiced by the trial court's consolidation without notice.

Ind. Trial Rule 65(A)(2) provides opportunity for consolidation as follows: "Consolidation of hearing with trial on merits. Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application." To determine what notice, if any, is due the parties prior to consolidation, we previously considered the interpretation federal courts have given the identically worded federal rule. *See Leinenbach v. Dairymen, Inc.*, 166 Ind.App. 80, 82, 333 N.E.2d 910, 912 (Ind.Ct.App.1975). We found that federal courts require clear and unambiguous notice prior to the trial court's consolidation, and applied that same requirement to Indiana's rule for consolidation. *Id.* Further, we explained that it is reversible error when the trial court does not give notice of the consolidation and the effect is to deprive a party of the right to present his or her case on the merits. *Id.* More recently, we have clarified that where notice is lacking, surprise alone is not sufficient to support reversal; the party claiming error must demonstrate that it was prejudiced by the consolidation. *See Bowen Eng'g Corp. v. W.P.M. Inc.*, 557 N.E.2d 1358, 1363 (Ind.Ct.App.1990).

In *Holman v. Koorsen Protection Servs., Inc.*, 580 N.E.2d 984 (Ind.Ct.App. 1992), *reh'g denied*, we analyzed a situation where the trial court took a motion for preliminary injunction under advisement after a hearing on the matter, and, thereafter, issued a final judgment on the merits of the case. *Id.* at 985. Upon appeal of the matter, we found that since there was no notice of consolidation prior to the issuance of the final judgment, it was not surprising that the record contained no evidence of prejudice. *Id.* at 986. We then considered an affidavit by counsel for Holman, filed on appeal, which stated that Holman would have conducted further discovery and presented additional witnesses at a trial on the merits if given the opportunity. *Id.* at 987. We found that the affidavit by Holman's counsel was sufficient to demonstrate prejudice caused by the lack of notice of the consolidation.

In the case before us now, Roberts filed a similar affidavit to the one filed in *Holman* with his motion to correct errors. The affidavit filed on Roberts' behalf stated that, if given proper notice of consolidation, he would have: (1) sent interrogatories to agents of Community who were in a position to observe relevant facts about Roberts' and Community's performance upon their agreement; (2) deposed those same individuals; (3) called witnesses other than himself and Dr. Knight; (4) called rebuttal witnesses; and (5) retained an expert on the custom and usage of medical residency programs and the performance of contracts, such as the one at issue.

Community argues that the affidavit filed by Roberts is less specific than the affidavit filed in *Holman,* and therefore, Roberts has not sufficiently shown prejudice so that we may reverse the trial court. Assuming for sake of argument that the affidavit Roberts filed is less specific than the affidavit filed in *Holman,*[2] Roberts'

---

2. The affidavit filed in *Holman* explained that Holman would have performed the following actions if the consolidation had not occurred:

(1) take depositions of defendant Holman's immediate supervisors at plaintiff Koorsen who would be most familiar with the facts concerning his employment with plaintiff;

(2) take depositions of selected customers of plaintiff Koorsen to inquire as to whether customer relationships with defendant Holman were such that his working for a competitor would create a substantial risk that Koorsen would lose business;

(3) call as defense witnesses other former employees of plaintiff Koorsen who now

counsel explained that Roberts would have undertaken the same types of activities that Holman explained he would take. As Roberts' counsel explained, Roberts would have conducted discovery and consulted an expert in order to prepare for a trial on the merits. Until such discovery is performed, and expert consulted, it may be imprudent for Roberts to make more specific claims. Further, we note the relatively short period of time between Robert's filing his complaint and the preliminary injunction hearing supports an inference that Roberts may not have fully developed his evidentiary support. Therefore, we conclude, by articulating a number of actions which he would have taken if given notice that the preliminary injunction hearing would be treated as a trial on the merits, Roberts has demonstrated that he was prejudiced by the consolidation without notice.

Additionally, Community argues that Roberts has waived his right to challenge the consolidation because Roberts' proposed findings of facts and conclusions of law encouraged the trial court to find that he had demonstrated, not only a reasonable likelihood of success at trial—as required for a preliminary injunction—"but has demonstrated that the contract has indeed been breached." (Appellee's App. p. 196). Essentially, Community argues, Roberts requested that the preliminary hearing be consolidated with the trial on the merits if the trial court finds in Roberts favor, and therefore cannot claim prejudice by the consolidation without notice. However, Community cites no authority, precedential or persuasive, which would support its contention. Ind. Appellate Rule 46(A)(8)(a) requires that each contention made by parties in their arguments be supported by citations to the authorities. Moreover, the natural process of litigation involves parties improving their evidentiary support as the proceedings progress, while bolstering the sufficiency of their evidence in proving their ultimate claims from inception of the litigation. Thus, we are not persuaded that Roberts' request that the trial court rule in his favor on the merits based upon the evidence he had presented during the preliminary hearing waives his claim that he has been prejudiced by the consolidation without notice.

## II. *Sufficiency of the Evidence to Support the Final Order*

Roberts disputes whether the evidence submitted at the preliminary injunction hearing was sufficient to support the trial court's final judgment in favor of Community. Specifically, Roberts claims that he was not afforded the specific protections outlined in the Residency Program Due Process Policy, including: (1) thirty days notice required prior to termination; (2) a second performance improvement plan, as the only performance improvement plan was issued under a prior contract; or (3) a Notice of Probation form. To the contrary, Community argues that the language of the contract permits dismissal of a resident without adherence to the due process protections cited by Roberts, and therefore it has sufficiently demonstrated there was no breach of the contract. Re-

work for "Automatic" Sprinkler in Indianapolis to rebut plaintiff's contention that defendant Holman's knowledge of Koorsen's operations is a secret in the local industry. These witnesses would include Dennis Jackson, who was formerly defendant Holman's immediate supervisor at Koorsen; and

(4) retain an independent expert witness familiar with the fire protection industry in Indianapolis to comment on whether defendant Holman's skills are unique and other facts pertaining to the business of fire protection in Indianapolis as they relate to the covenant's reasonableness.
*Holman*, 580 N.E.2d at 987.

gardless, because we conclude that Roberts was prejudiced by the trial court's consolidation of the preliminary injunction hearing with the trial on the merits without notice due to the facts that the consolidation has inhibited Roberts' development of evidence, we cannot determine this issue at this time. The matter must be remanded to the trial court for further proceedings.

## CONCLUSION

For the foregoing reasons, we conclude that Roberts has been prejudiced by the trial court's failure to provide clear and unambiguous notice prior to consolidation of the preliminary injunction hearing with the trial on the merits and remand for further proceedings.

Reversed and remanded.

SHARPNACK, J., concurs and concurs with concurring in result separate opinion.

FRIEDLANDER, J., concurs in result with separate opinion.

FRIEDLANDER, Judge, concurring in result.

I concur in the result reached by the Majority, but write separately to explain my view regarding the requisite prejudice that must be shown to gain reversal under *Holman v. Koorsen Protection Servs., Inc.*, 580 N.E.2d 984 (Ind.Ct.App.1992). The Majority discusses the specificity required under *Holman* and correctly concludes that Roberts's affidavit was specific enough in terms of detailing what actions he would have undertaken had he known it was a trial on the merits rather than a preliminary injunction hearing. I wish to emphasize, however, that I do not think it is enough for the movant to simply detail what different actions it would have undertaken; I believe there must also be some showing that such actions could have

changed the result of the trial. I believe the Majority's opinion may be interpreted such that no such showing is necessary. Subject to these comments, I concur in reversing judgment on the merits in favor of Community.