ATTORNEYS FOR APPELLANT
Denise K. LaRue
Meghan U. Lehner
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Matthew S. Effland
Brandon M. Shelton
Indianapolis, Indiana



### In the
### Indiana Supreme Court

No. 49S02-0804-CV-189

JOHN C. ROBERTS, M.D.,

*Appellant (Plaintiff below),*

v.

COMMUNITY HOSPITALS OF
INDIANA, INC.,

*Appellee (Defendant below).*

Appeal from the Marion Superior Court, No. 49D02-0605-CT-022328
The Honorable Kenneth H. Johnson, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 49A02-0701-CV-17

**December 9, 2008**

**Boehm, Justice.**

Indiana Trial Rule 65(A)(2) allows a trial court to advance and consolidate a trial on the merits with a preliminary injunction hearing. The rule explicitly authorizes this action either "[b]efore or after the commencement of the hearing." A trial court must ordinarily provide notice to the parties when it intends to exercise this authority. Consolidation without notice is not reversible error, however, absent a showing of prejudice, which requires identification of evidence that was not adduced at the hearing and might reasonably affect the outcome. Identification of steps the party might have taken in hopes of producing unspecified new evidence is insufficient where the parties have been afforded reasonable opportunity to develop the facts through discovery or access to relevant witnesses and documents.

**Facts and Procedural History**

Dr. John C. Roberts brought this action against Community Hospitals of Indiana seeking injunctive relief and damages for breach of an employment contract. Dr. Roberts was in the second year of his medical residency in Community Hospitals' Family Medicine Residency Program under a one-year contract beginning July 1, 2005. Dr. Roberts's contract required him, inter alia, to render appropriate care to patients in a timely manner, to conform to the established guidelines of the Family Medicine Center, and to record patient data completely, accurately, and promptly. The contract contained the following clauses respecting termination:

4.1 . . .

. . . .

a. Hospital may terminate this Agreement if:

(i) The Physician shall fail to carry out the terms and conditions specified herein, in which case the Hospital will provide the Physician thirty (30) days advance written notice of such termination, which includes providing the Physician the opportunity to discuss freely any differences, dissatisfactions or grievances that may exist.

(ii) The Physician continues to fail or is unable to complete or carry out the expectations and obligations specified herein for any reason, including injury or illness.

. . . .

4.4 Hospital reserves the right to request immediate termination of Physician in any one or more of the following events:

. . . .

(v) Hospital reasonably determines that Physician has failed to provide services consistent with Hospital's requirements;

(vi) Physician's clinical privileges granted by the Medical Staff are restricted, limited, revoked or terminated;

. . . .

(viii) Physician fails, after thirty (30) days written notice, to provide the services required by this Agreement

. . . .

(x) The occurrence of any event which constitutes grounds for termination of Physician under Hospital's disciplinary policy.

Section 4.7 of the contract incorporated a Residency Program Due Process policy, which outlined a series of progressive disciplinary measures Community would follow in order to address deficient performance. Those steps included oral counseling, formulation of a performance improvement plan, probation, suspension, and finally involuntary termination. In addition, Community enforced a parallel hospital-wide due process policy, known as "Policy Number: 8B," which categorized offenses based on their severity and provided for similar escalating levels of discipline for employee misconduct.

Dr. Roberts experienced difficulties from the outset of his residency. During his first year, he missed a mandatory, all-day residency retreat without notice and had ongoing problems with attendance, punctuality, and efficiency both in the office and on hospital rounds. Dr. Roberts's superiors met with him to address his performance issues in November 2004, and on March 31, 2005 he was placed on a formal performance improvement plan. Despite Dr. Roberts's problems in the first year, the parties executed the second-year contract at issue in this case on May 26, 2005.

Dr. Roberts continued to struggle with a number of performance issues in the second year of his residency. He persistently fell behind in completing patient medical charts, which are used both for monitoring patient care and for hospital billing purposes. He was often tardy, was absent from several days of surgical rotation, and missed a required residency exam without warning or justification. His supervisors, Drs. Clifton Knight and Daniel Rains, counseled him at various times about his patient chart backlog. On November 29, 2005, after at least three verbal and written warnings, Dr. Roberts was suspended by the hospital for delinquent charting. Community's practice administrator Rose Popovich informed Dr. Roberts in a memorandum dated November 29, 2005 that his misconduct was a serious matter that could result in termination.

Dr. Roberts returned to work in December 2005 and was warned by Dr. Knight that any additional suspensions would result in his termination. A written plan was established for Dr. Roberts to catch up on his charting and to improve his overall efficiency. Shortly after his return, Dr. Roberts missed at least two morning surgery rotations without notifying his preceptor, Dr. Ronald Baughman. Dr. Roberts also failed to attend a mandatory test of residents' diagnostic

3

abilities and patient interaction, and according to Dr. Knight, Dr. Roberts arrived ninety minutes late for a rescheduled makeup exam.

Ultimately, on March 10, 2006, Dr. Roberts's residency was terminated for the unexcused absences, the prior suspension, and a pattern of unprofessional behavior.

On May 31, 2006, Dr. Roberts sued Community for breach of his residency contract. He did not request a jury trial, but moved for both a temporary restraining order and a preliminary injunction reinstating him as a resident at Community. The temporary restraining order was denied following a brief evidentiary hearing on June 5, 2006.

On August 1, 2006, approximately two months after the suit was filed, the trial court held a preliminary injunction hearing. Over the course of approximately eight hours, testimony was received from Drs. Roberts, Knight, and Baughman, as well as Dr. Glen Bingle, Community's Vice President of Medical and Academic Affairs. The parties also introduced several dozen documents at the hearing, including Dr. Roberts's residency contract, the residency program's due process policy, the hospital's disciplinary procedures, faculty evaluations of Dr. Roberts, and correspondence and documentation pertaining to Dr. Roberts's performance, discipline, and termination.

At the conclusion of the preliminary injunction hearing, the trial court requested that the parties submit proposed findings of fact and conclusions of law. Dr. Roberts submitted a proposed order in which he not only claimed to have established the requirements for a preliminary injunction,[1] but also asserted he had "demonstrated that the contract ha[d] indeed been breached." He requested relief in the form of "specific performance of the contract," payment of "all back wages and salary," "a new contract commensurate with that of other third year residents," and announcement of his reinstatement to various individuals and entities.

---

[1] To obtain a preliminary injunction, the moving party must demonstrate by a preponderance of the evidence: (1) a reasonable likelihood of success at trial; (2) the remedies at law are inadequate; (3) the threatened injury to the movant outweighs the potential harm to the nonmoving party from the granting of an injunction; and (4) the public interest would not be disserved by granting the requested injunction. Cent. Ind. Podiatry, P.C. v. Krueger, 882 N.E.2d 723, 727 (Ind. 2008).

In a single order entitled "Final Judgment," the trial court consolidated the preliminary injunction hearing with a trial on the merits pursuant to Trial Rule 65(A)(2), denied Dr. Roberts's application for a preliminary injunction, and entered final judgment in favor of Community on the breach of contract claim. The court had not provided notice of consolidation to the parties prior to the entry of judgment.

The court found that it had enough evidence before it to render a judgment on the merits, and that the evidence showed Community was within its contractual rights when it terminated Dr. Roberts. The court held that Community had cause to terminate Dr. Roberts immediately under contract subdivisions 4.1(a)(ii) and 4.4(v). The court also held that even if Dr. Roberts was entitled to the 30-day notice provisions of section 4.1(a)(i), the warnings given by Ms. Popovich and Dr. Knight satisfied those requirements. The court further held that Community had complied with the residency program due process policy and the hospital's disciplinary policy 8B.

Dr. Roberts filed a Motion to Correct Error challenging the consolidation. The motion included an affidavit by plaintiff's counsel alleging that, had the trial court provided notice of consolidation, Dr. Roberts would have conducted additional discovery and called more witnesses at trial. Counsel stated that Dr. Roberts would have sent interrogatories to and deposed agents of Community that supervised or advised Dr. Roberts during his residency, and that Dr. Roberts would have called fact and rebuttal witnesses that he was not in a position to call at the preliminary injunction hearing. Counsel further stated that Dr. Roberts would have retained and been in the position to call at trial "an expert concerning custom and usage regarding medical residency programs and the performance of contracts such as the one in question." At the hearing on Dr. Roberts's motion, counsel argued that

> We, in fact, did not do substantial discovery, and we would have presented other witnesses, fact witnesses, and we were actually pursuing the possibility of expert witnesses, as well, to testify as to the nature of these residency contracts. We were not able to do so and didn't expect that we would have to do so. Ultimately, we believe that on the limited time frame we needed to bring this action and to have Dr. Roberts' contract honored to the end of its term. . . .
>
> . . . .

5

. . . It's our contention that we believe that there are significant facts that could have been considered that we could have put on had the circumstances been different and had we known that this was going to be a trial on the merits. . . .

. . . .

. . . There is no way that anybody other than Dr. Roberts [at the time of the preliminary injunction hearing] could have testified. We could have bolstered Dr. Roberts' credibility by having other witnesses. An expert witness who can testify as to how these contracts are dealt with is relevant. . . .

. . . .

. . . They have an accreditation that's national and, in fact, they have to adhere to those policies. It isn't an Indiana organization that accredits them. They are headquartered in Chicago, but they do it for the entire nation. So, it's not simply a narrow exception.

Following the hearing, the trial court denied Dr. Roberts's Motion to Correct Error.

Dr. Roberts appealed the trial court's consolidation and final judgment. See Roberts v. Cmty. Hosps., 878 N.E.2d 234 (Ind. Ct. App. 2007). Community countered that Dr. Roberts had failed to show he was prejudiced by the consolidation. Community also argued that by submitting a proposed order to the trial court addressing the merits of the action, Dr. Roberts had waived any improper consolidation claim. The Court of Appeals reversed and remanded. Id. at 240. Relying principally on Holman v. Koorsen Protection Services, Inc., 580 N.E.2d 984 (Ind. Ct. App. 1991), discussed infra, the Court of Appeals held that the affidavit submitted by Dr. Roberts's counsel sufficiently demonstrated that he was prejudiced by the consolidation. Id. at 239. The Court of Appeals found that Dr. Roberts had only a brief time for discovery, that he may not have fully developed his evidentiary support, and that it would have been imprudent for him to make more specific claims than those delineated in counsel's affidavit. Id. The Court of Appeals also held that Dr. Roberts's proposed order requesting final relief did not operate to waive his allegation of error. Id.

Judge Friedlander concurred in the result, but in a separate opinion explained that he did "not think it is enough for the movant to simply detail what different actions it would have undertaken." Id. at 240. Rather, in his view, "there must also be some showing that such actions could have changed the result of the trial." Id. Judge Sharpnack concurred with Judge Friedlander's separate opinion. Id.

6

We granted transfer.

## Standard of Review

There is no Indiana precedent squarely addressing the standard of review of a trial court's decision to advance and consolidate a trial on the merits with a preliminary injunction hearing. We agree with the federal authorities that the decision is reviewed for abuse of discretion. See D.L. Cromwell Invs., Inc. v. NASD Reg., Inc., 279 F.3d 155, 158 (2d Cir. 2002); see also Am. Train Dispatchers Dep't of Int'l Bhd. of Locomotive Eng'rs v. Fort Smith R.R. Co., 121 F.3d 267, 270 (7th Cir. 1997). Consolidation without notice is error as a matter of law but will be reversed only upon a showing of prejudice. Eli Lilly & Co., Inc. v. Generix Drug Sales, Inc., 460 F.2d 1096, 1106 (5th Cir. 1972); Bowen Eng'g Corp. v. W.P.M., Inc., 557 N.E.2d 1358, 1363 (Ind. Ct. App. 1990). We review the question of prejudice as any other factual determination, and we do not disturb the trial court's finding unless it is clearly erroneous. Ind. Trial Rule 52(A). Findings of fact are clearly erroneous when they have no factual support in the record. Nichols v. Minnick, 885 N.E.2d 1, 3 (Ind. 2008). Here, however, the trial court made no explicit finding as to prejudice, so we review the issue de novo.

## I. Consolidation Without Notice

Indiana Trial Rule 65(A)(2) provides that "[b]efore or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application." We have never addressed this provision, which has been in the Indiana Trial Rules since 1970. Trial Rule 65(A)(2) is modeled substantially after Federal Rule of Civil Procedure ("FRCP") 65(a)(2).[2] 1970 Civil Code Study Commission Comments, reprinted in 4 William F. Harvey, Indiana Practice: Rules of Procedure Annotated 510 (3d ed. 2003). The purpose of both Trial Rule 65(A)(2) and its federal counterpart is judicial efficiency. See Fed. R. Civ. P. 65 advisory committee's note (1966 amendment). The rule is useful

---

[2] The federal rule includes one additional sentence: "But the court must preserve any party's right to a jury trial." Fed. R. Civ. P. 65(a)(2). This clause was "eliminated as redundant" from the Indiana rule. 1970 Civil Code Study Commission Comments, reprinted in 4 William F. Harvey, Indiana Practice: Rules of Procedure Annotated 510 (3d ed. 2003). The right to a jury trial is not at issue here because Dr. Roberts did not request a jury trial within the time limits prescribed by Trial Rule 38(B).

when it appears that a substantial part of the evidence offered on the application [for a preliminary injunction] will be relevant to the merits and will be presented in such form as to qualify for admission on the trial proper. Repetition of evidence is thereby avoided. . . . [T]o consolidate the proceedings will tend to expedite the final disposition of the action.

Id.

Neither Trial Rule 65(A)(2) nor FRCP 65(a)(2) expressly requires trial courts to provide notice to litigants prior to advancement and consolidation. However, federal courts have interpreted FRCP 65(a)(2) to require notice so that parties are afforded a fair opportunity to present their cases on the merits. See, e.g., Pughsley v. 3750 Lake Shore Drive Coop. Bldg., 463 F.2d 1055, 1057 (7th Cir. 1972) ("[T]he parties should normally receive clear and unambiguous notice [of consolidation] either before the hearing commences or at a time which will still afford the parties a full opportunity to present their respective cases."); Nationwide Amusements, Inc. v. Nattin, 452 F.2d 651, 652 (4th Cir. 1971) ("[T]he term 'order' at least requires some form of notice to the parties that their final day in court has come."); Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981) (citing the rules from Pughsley and Nationwide); see also 11A Charles Alan Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure § 2950 (2d ed. 1995) (the consolidation authority "must be tempered by the due process principle that fair notice and an opportunity to be heard must be given the litigants before the disposition of a case on the merits"). Federal courts have further held that consolidation without notice is reversible error when the effect is to deprive a party of the right to present the case on the merits. See Eli Lilly & Co., Inc. v. Generix Drug Sales, Inc., 460 F.2d 1096, 1106-07 (5th Cir. 1972); Santiago v. Corporacion de Renovacion Urbana Y Vivienda de Puerto Rico, 453 F.2d 794, 797-98 (1st Cir. 1972). But the prevailing federal rule has long been that consolidation without notice is not reversible error absent a showing of prejudice. See Eli Lilly, 460 F.2d at 1106 ("[S]urprise alone is not a sufficient basis for appellate reversal; appellant must also show that the procedures followed resulted in prejudice . . . ."); see also Holly Sugar Corp. v. Goshen County Coop. Beet Growers Ass'n, 725 F.2d 564, 568 (10th Cir. 1984); Socialist Workers Party v. Ill. State Bd. of Elections, 566 F.2d 586, 587 (7th Cir. 1977).

In Leinenbach v. Dairymen, Inc., the Indiana Court of Appeals first adopted notice requirements for Trial Rule 65(A)(2) similar to those adopted by the federal courts under FRCP

8

65(a)(2). 166 Ind. App. 80, 82-83, 333 N.E.2d 910, 912 (1975). The Court of Appeals tracked federal authority and held that a consolidation under Trial Rule 65(A)(2) must be accompanied by "clear and unambiguous" notice to the litigants. Id. at 82-83, 333 N.E.2d at 912. Yet somewhat contrary to the holdings of the federal courts, the Leinenbach opinion implied that any consolidation without notice constitutes a due process violation compelling automatic reversal. See id. at 83, 333 N.E.2d at 912 ("Under the foregoing facts we are of the opinion that the 'clear and unambiguous' notice . . . is lacking in this case. In order to negate any lack of due process which we feel may be existent under the facts of this case the parties should have an opportunity to present additional evidence to the trial court, should they deem it necessary . . . .").

More recent Indiana authority has been more consistent with federal precedent. In Bowen Engineering Corp. v. W.P.M., Inc., the Court of Appeals revisited federal precedent and refined the Leinenbach rule. 557 N.E.2d 1358, 1363 (Ind. Ct. App. 1990). The court reiterated that consolidation requires sufficient notice to the parties, but followed Eli Lilly and held that consolidation without notice is not reversible error in the absence of prejudice. Id. The Bowen court affirmed a consolidation without notice where the plaintiff, among other things, cited "no evidence it failed to introduce" at the preliminary injunction hearing. Id.

In this case, the Court of Appeals principally relied on a third opinion, Holman v. Koorsen Protection Services, Inc., 580 N.E.2d 984 (Ind. Ct. App. 1991). In Holman, the plaintiff sued to enforce a noncompetition agreement and enjoin the defendant from working for a competitor. Id. at 985. After a preliminary injunction hearing, the trial court invoked Trial Rule 65(A)(2) without notice and entered a final judgment in favor of the plaintiff. Id. Defense counsel submitted an affidavit detailing several actions the defendant would have taken had he received notice of consolidation. Id. at 987. Those actions included (1) deposing the defendant's former supervisors who were familiar with the nature of the defendant's employment, (2) deposing the plaintiff's customers to determine whether the defendant's new employment would likely divert business from the plaintiff, (3) calling witnesses to rebut allegations that the defendant knew the plaintiff's trade secrets, and (4) retaining an expert as to the reasonableness of the noncompetition covenant. Id. The Court of Appeals agreed with Bowen that prejudice was required, and reversed and remanded for a trial on the merits, finding that prejudice was established. Id.

There is some dissonance between <u>Bowen</u> and <u>Holman.</u> <u>Holman</u> suggests that a litigant need only "articulate[] a number of plausible actions which he would have taken if he was given notice that the hearing would be treated as a trial." 580 N.E.2d at 987. <u>Bowen</u> suggests that a "showing of prejudice" requires identification of evidence not adduced at the preliminary injunction hearing that would affect the outcome. 557 N.E.2d at 1363. Federal authority on this point is also somewhat discordant, but the prevailing federal rule is that allegations of prejudice must be specific.[3] We agree and think prejudice requires more than simply identifying steps that might possibly produce evidence not adduced at the preliminary injunction stage. Bare assertions that discovery was incomplete or witnesses were not called will not suffice, at least where, as here, there was time for significant discovery. Rather, prejudice from a surprise consolidation ordinarily requires either admissible, material evidence that would be produced at trial and that would have likely changed the outcome on the merits, or a persuasive showing why available evidence was not accessible in the time between filing the complaint and the hearing. This standard accords not only with the decisions of the federal courts, but also with traditional notions of harmless error. <u>See</u> T.R. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

In the instant case, Dr. Roberts's counsel recited in an affidavit and in argument at the hearing on the Motion to Correct Error actions he asserted he would have taken had he been on notice of consolidation. Those included calling additional witnesses, and retaining an expert on the custom and usage of medical residency contracts. But there was no identification of the names of those witnesses, or any explanation of the substance of their testimony or how their testimony would affect the result. The record suggests that all the principal players testified at the hearing, and Dr. Roberts points to no relevant documents that were unavailable.

---

[3] The Second Circuit has couched its prejudice standard in more lenient terms, suggesting that a party can demonstrate prejudice merely by having "other material evidence to introduce" at trial. <u>See</u> <u>Johnson v. White</u>, 528 F.2d 1228, 1231 (2d Cir. 1975); <u>Abraham Zion Corp. v. Lebow</u>, 761 F.2d 93, 101 (2d Cir. 1985). But the majority view is that prejudice results when "the lack of notice cause[s] the complaining party to withhold certain proof which would show his entitlement to relief on the merits." <u>Eli Lilly</u>, 460 F.2d at 1106; <u>see also</u> <u>Atlantic Richfield Co. v. F.T.C.</u>, 546 F.2d 646, 651 (5th Cir. 1977) (citing and applying the <u>Eli Lilly</u> standard). Similarly, in <u>Socialist Workers Party</u>, the Seventh Circuit affirmed an entry of final judgment where the defendants' offer of proof showed nothing that "would have altered the result" of the proceedings. 566 F.2d at 587. <u>See also</u> <u>Haggblom v. City of Dillingham</u>, 191 P.3d 991, 1000 (Alaska 2008) (finding no prejudice from surprise consolidation where plaintiff had "not shown that there was any additional evidence of significance that would have been forthcoming at trial that could have allowed her to prevail").

10

We are not persuaded by the plaintiff's proposal to present expert testimony on the custom and usage of medical residency contracts. "Indiana follows 'the four corners rule' that 'extrinsic evidence is not admissible to add to, vary or explain the terms of a written instrument if the terms of the instrument are susceptible of a clear and unambiguous construction.'" Univ. of S. Ind. Found. v. Baker, 843 N.E.2d 528, 532 (Ind. 2006). To be sure, there are some potential ambiguities in Dr. Roberts's contract.[4] But even if we assume the contract's due process requirements are ambiguous, and if we assume further that expert testimony on the custom and usage of residency contracts would be admissible to interpret the contract, plaintiff's counsel has still not shown what the evidence of custom and usage would be or how it would resolve any ambiguity. Most importantly, there is no suggestion how an interpretation of this contract would entitle Dr. Roberts to relief on the merits. After a full day of testimony and review of all documents bearing on this claim, the trial court found that Community was justified in terminating Dr. Roberts under any of the contested provisions and had complied with all potentially relevant procedural requirements.

In short, by failing to identify admissible and material evidence that would have changed the outcome on the merits, counsel's post-hearing motion failed to show Dr. Roberts was prejudiced by the trial court's surprise consolidation.

We recognize that a stricter requirement of showing of prejudice has the potential to produce unfair results and may need to be relaxed in some situations. That may be the case where a party has had little to no opportunity for discovery of matters that are largely known only to the opponent. The case against surprise consolidation is stronger if the opponent of consolidation is also the party opposing preliminary injunctive relief. We therefore stress that any determination of prejudice following a surprise consolidation must consider (1) the scope of the issues in the case, (2) the opportunity that the parties have had for discovery, (3) the degree to which continuance and discovery requests have been honored, (4) the extent to which the parties litigated the merits of the case at the preliminary injunction hearing, and/or (5) the realistic ability of the trial

---

[4] Section 4.1(a)(i) requires the hospital to provide notice and due process prior to termination. Sections 4.1(a)(ii) and 4.4 allow the hospital to request termination without notice. Then Section 4.4(viii) seems to reincorporate the notice and due process requirements of Section 4.1. Meanwhile, the residency program's due process policy is incorporated by reference in Section 4.7, and on top of all that, pursuant to policy 8B, the hospital enforces its own set of disciplinary procedures applicable to all employees.

court to render judgment using the testimony and evidence elicited at the preliminary injunction hearing. See, e.g., Anderson v. Davila, 125 F.3d 148, 158 (3d Cir. 1997) (finding prejudice where defendant had only two weeks to prepare for preliminary injunction hearing and was denied continuance for discovery); Caribbean Produce Exch., Inc. v. Sec'y of Health & Human Servs., 893 F.2d 3, 7-8 (1st Cir. 1989) (reversing consolidation where significant issues of fact and law remained unresolved or inadequately developed after the preliminary injunction hearing); Paris v. U.S. Dep't of Hous. & Urban Dev., 713 F.2d 1341, 1346 (7th Cir. 1983) (finding prejudice where preliminary injunction took place nine days after complaint was filed and discovery was incomplete given the nature of the issues in the case); see also Omni Outdoor Advertising of Missouri, Inc. v. City of Topeka, 241 Kan. 132, 138, 734 P.2d 1133, 1138 (1987) ("Factors to be considered [in determining prejudice] include but are not limited to the parties' preparedness for trial, including the completion of or the need for additional discovery, the availability at the hearing of evidence which either party proposes to introduce upon trial, the issues involved, and the adequacy of time which the parties have to prepare for the hearing.").

None of the foregoing considerations justifies a finding of prejudice in Dr. Roberts's case. Dr. Roberts brought a single breach of contract claim. The only issues were whether his conduct warranted termination and whether Community complied with its contractual obligations when it terminated him. The record demonstrates that Community's complaints about Dr. Roberts's performance were well known to him. The parties had two months for discovery prior to the preliminary injunction hearing. This is sufficient time for extensive discovery and identification of any needed experts, and there is no claim that discovery was frustrated or that a continuance was necessary. The trial court granted a request for expedited discovery, and by the time of the preliminary injunction, the evidence included all contractual materials, a volume of faculty evaluations describing Dr. Roberts's performance as a resident, and extensive correspondence and documentation pertaining to Dr. Roberts's misconduct and discipline. Three of Dr. Roberts's supervisors testified at the hearing to his pattern of behavior and the hospital's course of disciplinary action. Dr. Roberts examined all three of them and testified on his own behalf. The trial court entertained nearly eight hours of testimony, the bulk of which was directed toward the merits of the action. Most if not all of the material facts were undisputed by the parties. And after the hearing, the trial court issued a thorough factual and legal analysis addressing all the issues in the case. In the words of the Nevada Supreme Court,

the hearing was plenary and detailed, and included extensive direct and cross-examination testimony from the several material witnesses for both sides. The case is uncomplicated, the issues presented by the motion for preliminary injunction are virtually the same as those relevant to a final determination; the facts involved were known intimately by all the parties, . . . [t]he trial briefs and arguments were ably presented by counsel; and the findings of fact and conclusions of law were detailed.

Zupancic v. Sierra Vista Recreation, Inc., 97 Nev. 187, 192, 625 P.2d 1177, 1180 (1981) (affirming a consolidation without notice); see also D. Patrick v. Ford Motor Co., 8 F.3d 455, 459-60 (7th Cir. 1993) (finding no prejudice where the "preliminary injunction hearing supplied the district court with everything it needed to resolve this dispute").

Given the scope of the issues litigated, the availability of witnesses and discovery, and the extent to which the merits were tried, we find no circumstances require relaxing the requirement of identification of specific evidence that was not available to be presented at the preliminary injunction hearing. Dr. Roberts's Motion to Correct Error provided him with the opportunity to identify additional evidence and he failed to do so. We therefore hold that the trial court's consolidation without notice was error, but not reversible error, and the Motion to Correct Error was properly denied.

## II. The Effect of Dr. Roberts's Proposed Relief

We turn briefly to Community's waiver argument. Community contends that Dr. Roberts cannot claim surprise from consolidation because he submitted a proposed order to the trial court requesting relief on the merits. Otherwise stated, Community contends that by soliciting the equivalent of a final judgment, Dr. Roberts invited the consolidation he now challenges as improper.

Community's waiver claim is one of first impression for this Court, but at least two federal circuits have addressed the issue under FRCP 65(a)(2). See Fenstermacher v. Phila. Nat'l Bank, 493 F.2d 333, 337 (3d Cir. 1974); Paris v. U.S. Dep't of Hous. and Urban Dev., 713 F.2d 1341, 1346 (7th Cir. 1983). In Fenstermacher, the plaintiff challenged the trial court's notice of consolidation as inadequate and untimely. 493 F.2d at 336-37. Noting in part that the plaintiff had "submitted a brief and a proposed order which contemplated solely a final adjudication on the merits," the Third Circuit held that the plaintiff had waived any objection to the adequacy or

13

timeliness of notice. Id. at 337. In Paris, the Seventh Circuit addressed a distinguishable set of facts but cited the Fenstermacher holding with approval: "In Fenstermacher . . . the appellant submitted a brief and a proposed order which were both premised upon the assumption that there had been a final adjudication on the merits. Thus the Third Circuit was justified in concluding that the appellant had acquiesced in the procedures followed in the district court." Paris, 713 F.2d at 1346 (citations omitted).

Here, Dr. Roberts's proposed order called for money damages as well as the prospective equitable relief available in a preliminary injunction. Unlike the plaintiff's proposed order in Fenstermacher, most of Dr. Roberts's proposed order was directed toward his preliminary injunction application. Nevertheless, Dr. Roberts's order in part contemplated a ruling on the merits and could be viewed as precluding him from challenging the entry of a final judgment that he himself requested. We find no square precedent on the effect of such a two-pronged request for ruling after a preliminary injunction hearing. We prefer to resolve cases on the merits if in doubt, and we therefore find no waiver in this case but observe that Community's argument finds support in the foregoing federal authority. In the future, of course, parties should be mindful that a request for relief available only in a final judgment after a preliminary injunction hearing may invite consolidation under Trial Rule 65(A)(2) and waive any objection to lack of notice.

## Conclusion

The trial court's consolidation pursuant to Trial Rule 65(A)(2) and entry of final judgment are affirmed.

Shepard, C.J., and Dickson, Sullivan, and Rucker, JJ., concur.

14