


FILED

May 14 2025, 9:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Dwayne T. Clemons,

*Appellant/Cross-Appellee-Defendant*

v.

State of Indiana,

*Appellee/Cross-Appellant-Plaintiff*

---

May 14, 2025

Court of Appeals Case No.
24A-CR-1601

Appeal from the Warren Circuit Court

The Honorable Hunter J. Reece, Judge

Trial Court Cause No.
86C01-2103-F6-25

---

**Opinion by Judge Weissmann**
Judge Scheele concurs.
Judge May dissents with a separate opinion.

**Weissmann, Judge.**

[1] Dwayne Clemons appeals the trial court's judgment revoking his probation and ordering him to serve 544 days in the Indiana Department of Correction (DOC). The State cross-appeals, arguing that Clemons's belated notice of appeal requires dismissal of his appeal. Opting to exercise our discretion under Appellate Rule 1 to reach the merits of Clemons's appeal, we affirm the trial court's judgment.

## Facts

[2] One evening in March 2021, police detected Clemons's vehicle speeding. When an officer attempted to pull him over, Clemons sped away. A chase ensued, with Clemons's vehicle reaching speeds over one hundred miles per hour. Police deployed stop sticks, and Clemons was apprehended. A search of his vehicle revealed marijuana.

[3] The State charged Clemons with Level 6 felony resisting law enforcement by use of a vehicle, Class B misdemeanor possession of marijuana, and two traffic infractions for operating with expired plates and speeding. Clemons later pleaded guilty to resisting law enforcement and possession of marijuana. The trial court convicted him accordingly and ordered him to serve 724 days suspended to probation. The terms of his probation required him to, among other things, serve 10 weekends in the Warren County jail or 180 days in a community corrections program, provide proof of employment, report to probation upon request, and pay various fees.

[4] Fourteen months later, in December 2022, the State petitioned to revoke Clemons's probation. The State alleged Clemons violated the terms of his probation because he: (1) had not reported to his probation officer since January 2022, nearly a year earlier; (2) did not serve any weekends in the Warren County Jail; (3) failed to provide proof of employment to probation; and (4) had over $1,000 in unpaid probation and court fees.

[5] On May 13, 2024, the trial court conducted an initial hearing on the State's petition to revoke probation.[1] Clemons appeared remotely from the Warren County Jail and represented himself. At the hearing, Clemons admitted the alleged violations. The trial court then revoked Clemons's probation and ordered him to serve in the DOC 544 days of his originally suspended 724-day sentence. The trial court told Clemons that if he wished to appeal this sanction, he could do so by filing a notice of appeal "within 30 days." Tr. Vol. II, p. 30. The court also advised Clemons of his right to an attorney on appeal but did not appoint one at that time. Clemons was remanded to the custody of the DOC, and the trial court's written order revoking Clemons's probation was issued the following day, on May 14, 2024.

[6] Clemons then wrote a letter to the trial court dated Sunday, June 9, 2024, in which he requested counsel be appointed to assist him with an appeal. That

---

[1] Over a year elapsed between the State's filing of the petition to revoke probation and the initial hearing on the petition because for most, if not all, of that time, Clemons was incarcerated in Illinois on unrelated charges. The Warren County court was unable to transfer Clemons to address this matter until the Illinois case was resolved.

letter was postmarked June 11, 2024 (two days before the 30-day deadline for filing the notice of appeal) and was received by the trial court on June 17, 2024 (four days after the 30-day deadline).

[7] The trial court then appointed Clemons counsel on June 24, 2024, and that counsel filed a "Motion to File Belated Notice of Appeal" with the trial court. Appellant's App. Vol. II, p. 76. The court granted that motion, citing good cause. On July 5, 2024, Clemons's counsel filed a belated notice of appeal—22 days after the deadline.

## Discussion and Decision

[8] On appeal, Clemons argues that the trial court abused its discretion by ordering him to serve 544 days of his previously suspended 724-day sentence. On cross-appeal, the State contends that Clemons's appeal should be dismissed as untimely under Indiana Appellate Rule 9(A)(1).[2] Because the issue raised by the State would be dispositive of Clemons's appeal, we consider it first.

## I. Timeliness of Appeal

[9] Indiana Appellate Rule 9(A)(1) requires a party who wishes to appeal a final judgment to file a notice of appeal within thirty days after the final judgment is noted in the trial court's chronological case summary (CCS). Here, the final

---

[2] We note that Clemons did not file a brief in response to the State's cross-appeal issue. When a party fails to file a brief responding to issues raised by an appellant, we review the issue only for prima facie error. *State v. Necessary*, 800 N.E.2d 667, 669 (Ind. Ct. App. 2003). "Prima facie error is defined as 'at first sight, on first appearance, or on the face of it." *Id.* (internal quotations omitted).

judgment was entered into the CCS on May 14, 2024, making the deadline for filing a notice of appeal June 13, 2024.

[10] If a notice of appeal is not timely filed, the right to appeal is forfeited. Limited exceptions apply to cases falling within the domain of Post-Conviction Rule 2, which provides "a path to an appeal for some defendants who have missed the procedural filing deadline." *Sevion v. State*, 223 N.E.3d 1154, 1156 (Ind. Ct. App. 2023). But as the State correctly notes, Post-Conviction Rule 2 does not apply to probation revocation proceedings. *Dawson v. State*, 943 N.E.2d 1281, 1281 (Ind. 2011) ("[B]elated appeals from orders revoking probation are not presently available pursuant to Post-Conviction Rule 2."). Therefore, the trial court was not authorized under Post-Conviction Rule 2 to grant Clemons's Motion to File Belated Notice of Appeal, and Clemons's right to appeal was forfeited.

[11] However, we may nonetheless restore a forfeited appeal and reach the merits of a case when there are "extraordinarily compelling reasons" to do so. *In re Adoption of O.R.*, 16 N.E.3d 965, 971 (Ind. 2014). These reasons are "not determined solely from the perspective of the litigant," but also include this Court's interest in "judicial economy and bringing finality to proceedings." *Morales v. State*, 19 N.E.3d 292, 296 (Ind. Ct. App. 2014).

[12] Our Supreme Court recently reaffirmed the principle that our appellate rules—specifically Appellate Rule 1—"'permit deviation' from their strict application" when circumstances warrant such an approach. *G.W. v. State*, 231 N.E.3d 184,

192 (Ind. 2024) (quoting App. R. 1). This is because "our procedural rules are merely means for achieving the ultimate end of orderly and speedy justice." *In re Adoption of O.R.*, 16 N.E.3d at 972 (internal quotations omitted). Considering these interests and ends, we exercise our discretion to address Clemons's appeal on the merits.

[13] Though the formal notice of appeal was belated, Clemons attempted to initiate the appeal process within the thirty-day window. His letter to the trial court requesting the appointment of appellate counsel was dated four days before the deadline and post-marked two days later, still within the window. Though the letter was ultimately received by the trial court and filed four days after the deadline, Clemons's attempt is not insignificant. *See id.* (restoring forfeited appeal under App. R. 1 where incarcerated defendant sought appointment of appellate counsel four days before the deadline to file notice of appeal and his claim implicated a fundamental liberty interest).

[14] As an incarcerated pro se litigant, Clemons had little or no control over when his letter would actually enter the mail stream or be delivered to the court. Unlike non-incarcerated appellants, prisoners cannot personally deliver documents to the court, track their mailings, or ensure timely delivery—they are entirely dependent on prison mail systems, which often cause delays beyond their control. *See Dowell v. State*, 922 N.E.2d 605, 607 (Ind. 2010) (recognizing, in the context of post-conviction relief, that incarcerated pro se litigants have limited control over the timeliness of their filings). For instance, incarcerated individuals must follow specific procedures to even request stamped envelopes,

*see generally Lawrence v. State*, 915 N.E.2d 202, 204 (Ind. Ct. App. 2009), and the prison mail process typically involves collection, inspection, and processing steps that can add significant delays before a letter even leaves a facility.

[15] Though Clemons made a clear effort to request assistance with his appeal before the deadline, his letter did not reach the court until 8 days after he wrote it, for reasons largely beyond his control. The trial court then appointed counsel within a week, and the notice of appeal was filed just ten days later. This relatively brief delay does not appear to have prejudiced the State.

[16] Addressing the merits now serves this Court's interests in judicial economy and bringing finality to proceedings. *See Morales*, 19 N.E.3d 292 at 296. Dismissing this appeal could lead to a post-conviction petition amounting to nothing more than a delay in the date of eventual review and additional costs to the taxpayers—the opposite result of the "orderly and speedy justice" our procedural rules are meant to promote. *In re Adoption of O.R.*, 16 N.E.3d at 972.

[17] Our Indiana courts have a strong preference to "'resolve cases on the merits instead' of on procedural grounds like waiver." *Pierce v. State*, 29 N.E.3d 1258, 1267 (Ind. 2015) (quoting *Roberts v. Cmty. Hosp. of Ind., Inc.*, 897 N.E.2d 458, 469 (Ind. 2008)). This principle, reinforced by our Supreme Court's decision in *G.W.,* guides us to use our authority under Appellate Rule 1 to address the substantive issues raised by Clemons rather than dismiss his appeal on procedural grounds.

## II. Revocation of Probation

[18] Clemons argues the trial court abused its discretion by ordering him to serve 544 days of his previously suspended 724-day sentence. We disagree.

[19] "Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled." *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). Accordingly, we reverse a trial court's revocation of probation and its resulting sanction only for an abuse of discretion, which occurs when the decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

[20] Upon finding a probation violation, the trial court may: (1) continue the probation with or without modifying the conditions; (2) extend the probationary period for up to one year; or (3) order all or part of a previously suspended sentence to be executed. Ind. Code § 35-38-2-3(h). The appropriateness of a sanction depends upon the "severity of the defendant's probation violation." *Heaton v. State*, 984 N.E.2d 614, 618 (Ind. 2013).

[21] Here, Clemons admitted to four violations of his probation conditions, including failure to report to his probation officer for nearly a year, failure to serve any weekends in the Warren County Jail, failure to provide proof of employment, and failure to pay court-ordered fees. These violations were significant and demonstrated a pattern of non-compliance with the terms of his probation. Though Clemons was intermittently incarcerated and experienced the loss of a family member during this time, he acknowledged at his revocation

hearing that there was a period of at least five months during which he was able to report to and comply with probation but did not.

[22] In recognition of Clemons's admission to the violations, the trial court subtracted 180 days from his previously suspended 724-day sentence and ordered that he execute only 544 days. This additional leniency came after the court's initial decision to suspend his entire sentence to probation, despite the highly dangerous nature of his offense which involved a high-speed police chase.

[23] Given the number and nature of Clemons's violations, the trial court's decision to order execution of 544 days of Clemons's previously suspended sentence was well within its discretion.

[24] Affirmed.

Scheele, J., concurs.
May, J., dissents with a separate opinion.

ATTORNEY FOR APPELLANT

Justin R. Wall
Wall Legal Services
Huntington, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

John R. Oosterhoff
Deputy Attorney General
Indianapolis, Indiana

**May, Judge, dissenting.**

I would dismiss this appeal rather than reach the merits of Clemons's arguments and, therefore, I respectfully dissent.

Because Clemons filed a notice of appeal outside the time required by Appellate Rule 9, the State asserted as cross-appellant that we should dismiss his appeal as untimely. (Br. of Appellee at 7-8.) Clemons did not file a cross-appellee brief to respond to the State's cross-appeal issue. When a party fails to respond to an issue raised by the opposing party, we review the issue for prima facie error. *Evansville Auto., LLC v. Labno-Fritchley*, 207 N.E.3d 447, 454 (Ind. Ct. App. 2023), *trans. denied*. "Prima facie is defined in this context as 'at first sight, on first appearance, or on the face of it.'" *State Farm Ins. v. Freeman*, 847 N.E.2d 1047, 1048 (Ind. Ct. App. 2006) (quoting *AmRhein v. Eden*, 779 N.E.2d 1197, 1205 (Ind. Ct. App. 2002)). On the face of it, Clemons forfeited his right to appeal by filing a notice of appeal outside the window provided by Appellate Rule 9. *See Sevion v. State*, 223 N.E.3d 1154, 1157 (Ind. Ct. App. 2023) (dismissing appeal, in part, because late notice of appeal forfeited right to appeal).

The majority reaches the merits of Clemons's arguments through Appellate Rule 1, but Clemons did not file a cross-appellee brief asserting that we should exercise our discretion under Appellate Rule 1 to reinstate his appeal. While Appellate Rule 1 allows us to deviate from the rules on our own motion, Clemons also did not assert any "extraordinarily compelling reasons" for us to

reinstate his forfeited appeal. *In re Adoption of O.R.*, 16 N.E.3d 965, 971 (Ind. 2014). Nor did he provide citations to authority or to pages in the record as required by Appellate Rule 46(A)(8)(a). Instead, the majority took on the task of scouring the record and making Clemons's arguments for him. This, I would not do.

[28] Our appellate courts apply the prima-facie-error rule not because it benefits the party that presented the unchallenged argument, but because it "relieve[s] this court of the burden of controverting the arguments advanced for reversal where that burden rests with" the other party. *Freeman*, 847 N.E.2d at 1048. The rule exists because our court system requires an appellate court to act as "an impartial adjudicator, not an advocate." *Conley v. State*, 183 N.E.3d 276, 283 (Ind. 2022). We are not to "step in the shoes of the advocate and fashion arguments on his behalf[.]" *Miller v. Patel*, 212 N.E.3d 639, 657 (Ind. 2023). Nor are we to take on "'the burden of searching the record and briefing the case.'" *Id.* (quoting *Dridi v. Cole Kline LLC*, 172 N.E.3d 361, 364 (Ind. Ct. App. 2021)). Instead, we "resolve the concrete issues properly tested through the adversarial process: adequate and cogent briefing is required for that process to live up to its potential." *Id.*

[29] Eighteen months ago, in *Sevion*, our court dismissed the appeal of a defendant who, like Clemons, failed to provide cogent argument on appeal for reinstating his forfeited appeal. 223 N.E.3d at 1157. Sevion missed the deadline for filing an appeal of the trial court's denial of his motion to reduce bond because Sevion did not request appellate counsel until the same day the notice of appeal

was due.  The trial court appointed appellate counsel, who filed a Post-Conviction Rule 2 motion for belated appeal, which the trial court granted.  Sevion then filed his notice of appeal.

[30]     On appeal, Sevion argued the merits of the trial court's denial of his bond motion, but the State asserted Sevion's appeal should be dismissed because Post-Conviction Rule 2 could not be used to bring a late appeal from motions to reduce bond.  We held that Post-Conviction Rule 2 was not an appropriate mechanism but that the relief provided by *O.R.*, which allows restoration of a forfeited appeal if there are extraordinarily compelling reasons to do so, could still be available.  *Sevion*, 223 N.E.3d at 1156.  We then explained:

> Of course, a defendant must still avail himself of this relief to receive its benefit.  Sevion did not.  Sevion never asserted *O.R.*'s standard of extraordinarily compelling reasons in his present appeal or during his time as a pro se petitioner.  The most that can be said is that Sevion asked this Court to exercise its inherent authority to consider an otherwise waived appeal.  Ind. Appellate Rule 1 ("The Court may, upon the motion of a party or the Court's own motion, permit deviation from these Rules.").  But the only basis for Sevion's argument is that his appellate counsel was appointed after the filing deadline had passed.  This claim alone is not enough.
>
> First, it does not excuse Sevion's failure to file the notice of appeal prior to obtaining counsel.  *See Shawa v. Gillette*, 209 N.E.3d 1196, 1200 n.2 (Ind. Ct. App. 2023) (holding pro se litigant to the same standard as a licensed attorney).  And second, it does not by itself represent an extraordinarily compelling reason to consider an otherwise waived appeal.  In *O.R.*, the late appointment of appellate counsel was considered

just one fact among several that justified the restoration of the waived appeal. 16 N.E.3d at 971-72. More importantly, *O.R.* involved the alleged deprivation of a "fundamental liberty interest." *Id*. at 972. Sevion nowhere alleges the existence of such an interest, nor any similarly compelling reason to consider his appeal, and we decline to make these showings on his behalf.

*Id*. at 1157. As Clemons's appeal has arrived before us in a nearly identical procedural posture, I would follow the wisdom of *Sevion*. Accordingly, I respectfully dissent.