Pursuant to Ind.Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before
any court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the
case.



ATTORNEY FOR APPELLANT:

**CARA SCHAEFER WIENEKE**
Wieneke Law Office, LLC
Plainfield, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

LUCAS E. HOLLAND,                        )
                                         )
    Appellant-Defendant,             )
                                         )
      vs.                          )    No. 53A01-1107-CR-333
                                         )
STATE OF INDIANA,                        )
                                         )
    Appellee-Plaintiff.              )

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Mary Ellen Diekhoff, Judge
Cause No. 53C05-1003-MR-308

**May 25, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Lucas Holland appeals his sentence for murder and Class B felony armed robbery. We affirm.

**Issues**

Holland raises two issues, which we restate as:

I.  whether the trial court abused its discretion when it sentenced him; and

II. whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

**Facts**

On March 25, 2010, the Brown County Sheriff's Department received a complaint from a resident that Holland had attempted to steal an ATV and that the resident had confronted Holland. Holland had driven away in a gold truck. That same day, the Monroe County Sheriff's Department was notified that a teenager, who was home from school due to an illness, woke to find Holland standing over him. The teenager grabbed a nearby rifle and ordered Holland to leave. Holland introduced himself and said he was interested in buying some motorcycles. Holland gave the teenager his phone number and left in a gold truck.

Later that day, Holland stole an ATV in Monroe County from David Moore. Moore was found dead in his driveway. He had been shot in the back of the head from less than one foot away. Officers found a 40-caliber casing in the driveway. Holland was later detained by police in Brown County, and he had Moore's ATV in the back of his gold truck. Officers found a 40-caliber handgun at Holland's parents' home.

2

Holland admitted to police that he shot Moore, but he claimed that Moore owed him mowing services and that he took the ATV as "compensation for his loss." Tr. p. 12. Holland described the incident as a "dangerous repossession." Id. at 13. The police found no indication that Moore did mowing services for Holland. Holland also admitted to attempting to take an ATV in Brown County and to entering the teenager's home without permission earlier in the day.

In Monroe County, the State charged Holland with murder, felony murder, and Class B felony robbery for the offenses involving Moore and Class B felony burglary for the incident with the teenager. While Holland was in the courtroom for a hearing, he told one of the officers escorting him, "see the guy in the green shirt. I blasted his friend." Id. at 16. The person in the green shirt was Moore's son. Holland pled guilty to murder and Class B felony robbery, and the State agreed to dismiss the felony murder and Class B felony burglary charges in the instant case and Class C felony burglary and Class D felony theft charges filed in Brown County.

At the sentencing hearing, the trial court identified the nature and circumstances of the offenses as an aggravator. The trial court acknowledged that Holland had no criminal history and that Holland had expressed remorse at the sentencing hearing. However, the trial court noted that it had "watched [Holland] laugh, joke, and carry on as if none of this means anything." Id. at 63. The trial court sentenced Holland to consecutive sentences of sixty-five years for murder and twenty years for robbery for an aggregate sentence of eighty-five years in the Department of Correction. Holland now appeals.

## Analysis

### I. Abuse of Discretion

Holland argues that the trial court abused its discretion by failing to consider certain proposed mitigators and by considering the nature of the offense as an aggravating factor. Sentencing decisions are within the sound discretion of the trial court. Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218. However, a trial court may be found to have abused its sentencing discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that explains reasons for imposing a sentence where the record does not support the reasons; (3) entering a sentencing statement that omits reasons that are clearly supported by the record and advanced for consideration; and (4) entering a sentencing statement in which the reasons given are improper as a matter of law. Id. at 490–91. The reasons or omission of reasons given for choosing a sentence are reviewable on appeal for an abuse of discretion. Id. The weight given to those reasons, i.e. to particular aggravators or mitigators, is not subject to appellate review. Id.

Holland first argues that the trial court abused its discretion by considering the nature of the offenses as an aggravating factor. "The nature and circumstances of an offense may properly be recognized as an aggravating circumstance." Hape v. State, 903 N.E.2d 977, 1002 (Ind. Ct. App. 2009), trans. denied. The trial court considered the nature and circumstances of the offenses, specifically the fact that Holland left Moore bleeding in his own driveway. The trial court also stated that it believed Holland killed Moore because Moore knew him and because Holland wanted to make sure he could get

4

away with the ATV. Holland argues that these circumstances are not heinous enough to warrant use as an aggravating factor. We disagree. The trial court was within its discretion to use these circumstances as an aggravating factor.

Next, Holland argues that the trial court abused its discretion by failing to consider his lack of a criminal history, his remorse, his mental health, and his guilty plea as mitigators. A trial court is not obligated to accept a defendant's claim as to what constitutes a mitigating circumstance. Rascoe v. State, 736 N.E.2d 246, 249 (Ind. 2000). A claim that the trial court failed to find a mitigating circumstance requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. Anglemyer, 868 N.E.2d at 493.

Holland argues that he expressed sincere remorse and that it should have been a mitigator. The trial court acknowledged Holland's expression of remorse at the sentencing hearing but did not find the remorse credible when compared with his conduct during the trial court proceedings. The trial court noted that it had "watched [Holland] laugh, joke, and carry on as if none of this means anything." Tr. p 63. Additionally, while Holland was in the courtroom for a hearing, he told one of the officers escorting him, "see the guy in the green shirt. I blasted his friend." Id. at 16. Holland was referring to Moore's son. Given Holland's conduct, we cannot say that his alleged remorse was clearly supported by the record. The trial court did not abuse its discretion by declining to find Holland's alleged remorse as a mitigator.

Holland also argues that the trial court should have considered his mental illness as a mitigator. The trial court noted that Holland had been evaluated by a psychologist

5

and a psychiatrist and that one evaluation showed Holland was "hot tempered, [has] poor anger control, [is] volatile, impulsive, and explosive." Id. at 62. The trial court did not otherwise mention Holland's argument that his alleged mental illness was a mitigator and apparently rejected the argument.

On appeal, Holland argues that he has severe mental health issues, as evidenced by his trouble in school, multiple suicide attempts, inability to maintain employment, and self-medication. The PSI and evidence presented at the sentencing hearing demonstrated that Holland was evaluated by Dr. Matt Oliver in a court-ordered evaluation. Dr. Oliver noted:

> I believe it is clinically reasonable to presume that Mr. Holland was sane at the time of the murder and burglary. He does not appear to suffer from a mental illness or defect that would otherwise compromise his ability to understand the nature of his actions; it appears that Mr. Holland may have had a diminished capacity due to his over-prescribed amount of Klonopin he voluntarily consumed. . . . To be direct, Mr. Holland doesn't think he should be charged with murder because he doesn't have a prior legal history and was just unstable because he had been off of his medications for over a week.

PSI at 14. Holland was also evaluated by Dr. Greg Sidell, who found Holland to be legally sane at the time of the alleged offense. Dr. Sidell noted: "Although Mr. Holland made the claim to me that he 'just found out that I am schizophrenic, bipolar, and I have severe depression' the only one of these potential diagnos[e]s that is corroborated by his psychiatric records from Bloomington Meadows Hospital would be the possibility of depression." Id. Dr. Sidell noted that Holland's claim that he cannot recall the incident

6

with Moore is inconsistent with his statement to the police and that Holland's mother reported that the alleged schizophrenia symptoms have been "of recent report." Id.

Finally, Holland was also evaluated by Dr. Albert Fink. Dr. Fink indicated that the MMPI-II profile suggests that Holland has a "schizoid/paranoid personality" and the STAXI test was "dominated by responses that show high levels of anger/hostility, together with being hot-tempered and having very poor anger control." Exhibit A p. 2. Dr. Fink opined that "[t]he confluence of these characteristics, together with a pattern of substance abuse, suggests behavioral patterns that can be volatile, impulsive, explosive, and can be triggered by seemingly innocuous events." Id.

Our supreme court has identified several considerations "that bear on the weight, if any, that should be given to mental illness in sentencing." Weeks v. State, 697 N.E.2d 28, 30 (Ind. 1998). "These factors include: (1) the extent of the defendant's inability to control his or her behavior due to the disorder or impairment; (2) overall limitations on functioning; (3) the duration of the mental illness; and (4) the extent of any nexus between the disorder or impairment and the commission of the crime." Id.

Holland presented no evidence that he was unable to control his behavior due to his alleged mental illness. In fact, two of the evaluators found little indication of a mental illness. Holland argues that he has significant limitations due to his mental illness and that he has had symptoms since childhood. However, there is little evidence in the record to support either assertion. Finally, there is no evidence of a nexus between Holland's alleged mental illness and his offenses. The trial court did not find Holland's claim that he did not remember the incidents at issue credible. Rather, the trial court believed that

7

Holland was, as described by Dr. Fink, "hot tempered, [has] poor anger control, [is] volatile, impulsive, and explosive" and murdered Moore when he was confronted. Tr. p. 62. Given the three evaluations of Holland, the trial court did not abuse its discretion when it concluded that Holland's alleged mental illness was not a significant mitigator.

Next, Holland argues that the trial court should have considered his lack of a criminal history as a mitigator. Generally the lack of a criminal history is a significant mitigating factor. McElroy v. State, 865 N.E.2d 584, 592 (Ind. 2007). However, "[u]ncharged crimes may be considered in assessing 'lack of criminal history' as a claimed mitigating circumstance." Wilkes v. State, 917 N.E.2d 675, 692 (Ind. 2009), cert. denied. "Similarly, relevant evidence of another crime is admissible to rebut the defendant's claimed lack of criminal history even if that evidence may not be sufficient to support a conviction." Id. Here, as a juvenile, Holland had a delinquency petition alleging possession of a handgun without a license and hunting in a closed area. Holland received six months of informal adjustment, twenty-four hours of community service, and a one-day juvenile process class. Holland also admitted to a significant substance abuse problem, including the use of marijuana and oxycontin. Although Holland's criminal history might not be an aggravating factor, we cannot say that the trial court abused its discretion when it did not consider Holland's lack of a criminal history as a mitigator. See, e.g., Dennis v. State, 908 N.E.2d 209, 213 (Ind. 2009) (holding that the trial court did not abuse its discretion by failing to consider the defendant's lack of a criminal history as a mitigator in sentencing the defendant for murder where, although the defendant had no history of convictions, he admitted a history of selling and using drugs).

8

Finally, Holland argues that his guilty plea should have been a mitigator. Our supreme court has "long held that a defendant who pleads guilty deserves 'some' mitigating weight be given to the plea in return." McElroy, 865 N.E.2d at 591-92. However, a guilty plea may not be significantly mitigating when the defendant receives a substantial benefit in return or when the defendant does not show acceptance of responsibility. Francis v. State, 817 N.E.2d 235, 238 n.3 (Ind. 2004). Because of the inherent mitigating nature of a guilty plea, we have recognized that a trial court "generally should make some acknowledgment of a guilty plea when sentencing a defendant." Hope v. State, 834 N.E.2d 713, 718 (Ind. Ct. App. 2005).

Here, in exchange for his guilty plea, Holland received a significant benefit. Holland had admitted to the police that he committed the crime spree on March 25, 2010. The State dismissed Class B felony burglary charges in Monroe County and the Class D felony theft and Class B felony burglary charges in Brown County.[1] Even if the trial court should have mentioned Holland's guilty plea as a mitigator, if a trial court has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." Anglemyer, 868 N.E.2d at 491. Given Holland's confession and his significant benefit from the guilty plea, we can say with confidence that the trial court would have imposed the same sentence if it had considered Holland's guilty plea as a mitigator.

---

[1] The State also dismissed felony murder charges, but we recognize that Holland could not have been sentenced for the murder and the felony murder charges.

## II. Inappropriate Sentence

Holland argues that his eighty-five-year sentence is inappropriate in light of the nature of the offenses and the character of the offender. Indiana Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. When considering whether a sentence is inappropriate, we need not be "extremely" deferential to a trial court's sentencing decision. Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). Still, we must give due consideration to that decision. Id. We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. Id. Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." Id. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. Davidson v. State, 926 N.E.2d 1023, 1025 (Ind. 2010).

The nature of Holland's offense is disturbing. Although Holland argues that the nature of his offense was not "particularly horrific," we disagree. Appellant's Br. p. 15. In a March 25, 2010 crime spree, Holland shot and killed Moore while stealing his ATV. In his own driveway, Moore was shot on the back of the head from less than one foot away. Holland left the scene with Moore's ATV, which was still in the back of his truck when he was apprehended.

As for Holland's character, we find few redeeming qualities. Holland claims that he has suffered from a "debilitating mental illness his entire life," that he self-medicated with drugs and alcohol, that he pled guilty, that he was remorseful, and that he led a generally law-abiding life until the instant offenses. Id. We acknowledge that Holland pled guilty and has a minimal criminal history. However, Holland received a significant benefit from his plea agreement, and Holland admittedly abused marijuana and prescription medications and went on a crime spree on March 25, 2010. As for Holland's alleged mental illness, many of Holland's mental illness claims were unsubstantiated. He was evaluated by three mental health professionals, and Dr. Oliver found that Holland did "not appear to suffer from a mental illness or defect that would otherwise compromise his ability to understand the nature of his actions." PSI p. 14. Dr. Sidell found that the only potential diagnosis that was supported by Holland's medical records was depression.

Finally, although Holland expressed remorse at sentencing, the credibility of that remorse is called into question by his conduct and statements during these proceedings. After his arrest, Holland admitted to shooting Moore and taking his ATV in, what Holland described as, a "dangerous repossession." Tr. p. 13. Holland claimed that

11

Moore owed him mowing services, but officers could find no indication that Moore did mowing services for Holland. Holland later claimed that he could not remember the events of March 25th. During court proceedings, Holland made light of the situation, bragged about "blast[ing]" Moore, and laughed and joked. Id. at 16. In the PSI, Holland stated: "I feel sorry for [Moore's] family and I miss my family. I can't imagine how they feel. I knew one and he's given me the finger. That's almost caused drama. I've had to restrain myself and think about if that would have happened." PSI p. 18.

Given these circumstances, we cannot say that the trial court's imposition of the maximum eighty-five-year sentence for murder and Class B felony robbery was inappropriate in light of the nature of the offense and the character of the offender.

## Conclusion

The trial court did not abuse its discretion when it sentenced Holland, and Holland's sentence is not inappropriate in light of the nature of the offense and the character of the offender. We affirm.

Affirmed.

BAKER, J., and BROWN, J., concur.