Joseph E. WEEKS, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 03S00–9701–CR–10.

Supreme Court of Indiana.

June 25, 1998.

David A. Nowak, Columbus, for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, for Appellee.

BOEHM, Justice.

On the night of May 16, 1995, Joseph E. Weeks and Bill Anderson were dining together at Applebee's restaurant in Columbus where the two often met. Anderson at one point went to the restroom. Viewed most favorably to the verdict, the evidence showed that Weeks followed Anderson into the restroom and shot him in the back of the head at close range. Anderson died from the wound two days later. Weeks was charged with murder and found guilty but mentally ill ("GBMI"). The trial court sentenced him to the maximum term of sixty years imprisonment. In this direct appeal, Weeks challenges the jury's rejection of his insanity defense and the reasonableness of the sentence. We affirm the conviction and revise the sentence to the presumptive term of fifty years.

## I. Insanity Defense

Weeks's defense at trial was insanity. He therefore had the burden of establishing by a preponderance of the evidence that "as a result of mental disease or defect, he was unable to appreciate the wrongfulness of the conduct at the time of the offense." IND. CODE §§ 35–41–3–6(a) & 35–41–4–1(b) (1993). When an insanity defense is interposed, the trier of fact has the additional options of returning a verdict of either "not responsible by reason of insanity at the time of the crime" or "guilty but mentally ill at the time of the crime." IND.CODE § 35–36–2–3 (1993). "Mentally ill" is defined as "having a psychiatric disorder which substantially disturbs a person's thinking, feeling, or behavior and impairs the person's ability to function." IND.CODE § 35–36–1–1 (1993).

Weeks argues that the jury's verdict of GBMI was erroneous because he proved by a preponderance of the evidence that he was unable to distinguish right from wrong at the time of the crime. Although insanity and GBMI both require proof of some form of mental disorder or impairment, a finding of insanity also requires a showing of the defendant's inability to understand the wrongfulness of the criminal conduct; mental illness alone is not a defense to a crime. *Gambill v. State*, 675 N.E.2d 668, 673 (Ind. 1996). Weeks describes his claim as a challenge to the "sufficiency" of the evidence supporting the verdict, but it is really a claim that the evidence proved that, in addition to being mentally ill, he was unable to appreciate the wrongfulness of his actions. A defendant appealing the rejection of an insanity defense must demonstrate that the evidence was without conflict and led only to the conclusion that the defendant was insane when the crime was committed. *Id.* at 672. Based on the evidence presented at trial, the jury could have found that Weeks was mentally ill but able to distinguish right from wrong at the time of the offense. There was abundant expert testimony that Weeks had some form of mental illness, including schizophrenia or bipolar disorder. However, the evidence was conflicting as to whether Weeks could tell right from wrong when he shot Anderson. Indeed, only one of several experts concluded that Weeks was unable to appreciate the wrongfulness of his actions; the others offered the opposite opinion. Because the jury was entitled to credit the latter testimony and disregard the former, the rejection of Weeks's insanity defense presents no basis for reversal. *Id.*

## II. Sentence Review

Weeks next contends that the trial court erred in imposing the maximum term of sixty years. Although the decision to enhance or reduce a sentence is generally within the trial court's discretion, *Archer v. State*, 689 N.E.2d 678, 683 (Ind.1997), the Indiana Constitution gives this Court express authority to "review and revise the sentence im-

posed." IND.CONST. art. VII, § 4. The extent of this review is governed by Indiana Appellate Rule 17(B), which provides that a sentence authorized by statute will not be revised "except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 17(B). Accordingly, "the issue is not whether in our judgment the sentence is unreasonable, but whether it is clearly, plainly, and obviously so." *Prowell v. State*, 687 N.E.2d 563, 568 (Ind.1997), *petition for cert. filed*, —— U.S.L.W. —— (U.S. May 26, 1998) (No. 97–9215). The presumptive term in this case is fifty years enhanced or reduced by a maximum of ten years. 1995 Ind.Acts, P.L. 2, § 128. In imposing the maximum sentence, the trial court cited the following: (1) Weeks's need for correctional or rehabilitative treatment to monitor and treat his mental illness; (2) a "reduced" or "suspended" sentence would depreciate the seriousness of the crime; (3) the victim was physically infirm; (4) Weeks lied on his handgun permit application about whether he had received prior mental health treatment; and (5) Weeks failed to take regularly scheduled medication.

■ In arguing that his sentence should be reduced, Weeks makes two points: (1) the second factor is not a valid aggravating circumstance; and (2) the trial court erred in failing to find his mental illness to be mitigating. Weeks is correct that the "depreciate seriousness" aggravator may not be used to enhance a sentence; rather, it is relevant only to determine whether a reduced sentence should be imposed. *See, e.g., Widener v. State*, 659 N.E.2d 529, 533 (Ind.1995). The State responds that even if this factor is excluded here, the trial court did not abuse its discretion because the sentence remains supported by several valid aggravating circumstances. Assuming for sake of argument that the four other factors support an enhanced sentence, we agree with Weeks that the trial court erred in rejecting Weeks's illness as a mitigating factor. The record indicates that the trial court was aware of the jury's verdict as potentially affecting the sentence:

Now, it may very well be . . . that a part of [a] finding of guilty, but mentally ill [is] that the maximum sentence . . . is the same as the presumptive sentence. Well, maybe I don't get it or maybe I think the circumstances in this case are different, but it appears to the court that there are sufficient aggravating circumstances and that the crime itself warrants the imposition of an enhanced penalty beyond the presumptive.

The court also stated: "It is difficult to separate out what is happening, or what did happen in this case from Mr. Weeks's mental situation." However, the trial court ultimately found that there were no mitigating circumstances. In this respect the court erred.

■ We have emphasized that a GBMI defendant "is not automatically entitled to any particular credit or deduction from his otherwise aggravated sentence" simply by virtue of being mentally ill. *Archer*, 689 N.E.2d at 684. This derives from clear legislative intent that, subject to exceptions not applicable here, a defendant found GBMI is to be sentenced "in the same manner as a defendant found guilty of the offense." IND. CODE § 35–36–2–5(a) (Supp.1994). Nonetheless, in sentencing a GBMI defendant "in the same manner" as any other guilty defendant, trial courts should at a minimum carefully consider on the record what mitigating weight, if any, to accord to any evidence of mental illness, even though there is no obligation to give the evidence the same weight the defendant does. A verdict of GBMI may signal that significant evidence of mitigating value on the point has been presented. *Archer* recently outlined several considerations that bear on the weight, if any, that should be given to mental illness in sentencing. These factors include: (1) the extent of the defendant's inability to control his or her behavior due to the disorder or impairment; (2) overall limitations on functioning; (3) the duration of the mental illness; and (4) the extent of any nexus between the disorder or impairment and the commission of the crime. *Archer*, 689 N.E.2d at 685.

■ Applying these criteria here, we agree with Weeks that the trial court erred

in not finding his history of mental illness—and the jury's verdict of GBMI—to be of some mitigating value. Uncontradicted evidence showed that Weeks was first diagnosed with schizophrenia in 1989 when he was twenty-seven years old.[1] Between 1989 and 1995, Weeks was in and out of hospitals and was diagnosed as having a range of disorders, including schizophrenia, schizo-affective disorder, and bipolar disorder. These evaluations are consistent with others offered at trial as to Weeks's mental condition after the offense. Indeed, the State does not dispute that Weeks has an extensive and apparently unbroken history of mental illness dating to 1989. His mental problems were not completely debilitating: if Weeks took a range of medications, he could function fairly normally much of the time, although with some delusional and grandiose thought patterns. For example, several witnesses testified that Weeks would frequently steer conversations towards government conspiracies, aliens, and other science fiction themes. Several witnesses who knew Weeks—including his parents, his employer at the time of the shooting, and several doctors who had evaluated him—testified that they did not regard him to be dangerous. One of the arresting officers testified that Weeks was calm after being taken into custody on the night of the shooting. A videotaped interrogation of Weeks that occurred several hours after his arrest shows no hint of aggression.

Pointing to this evidence, the State argues that there was little or no link between the crime and Weeks's mental infirmities. Weeks replies that there is "ample evidence" that his mental illness caused him to kill Anderson. The expert testimony on which Weeks relies for this proposition, if credited, shows only that Weeks was, or may have been, delusional on the night of the shooting, not that there was necessarily a connection between any delusions and the crime. At no point did Weeks assert that voices, visions, or hallucinations caused him to act as he did. Weeks testified at the sentencing hearing that although he was dining with Anderson at Applebee's on the night that Anderson was shot, Weeks did not believe that he killed Anderson and that if he did, he did not know why. In the videotaped statement Weeks gave to police shortly after the shooting, he claimed not to know why he was in custody or what had happened to Anderson. This behavior is consistent with Weeks's occasional inability to control his impulses. For example, eight months before the crime, Weeks ran out of gas on Interstate 65 near Indianapolis. Police found him standing naked near his car on the side of the freeway, mumbling about "black gashes of cancer" in the vehicle. In 1993 he was involuntarily hospitalized after he threatened to "blow away" his parents with a shotgun. One doctor who examined Weeks about a month before the killing concluded that Weeks might have an escalation of symptoms due to decreased medication. Weeks and Anderson were friends and there is no claim that Weeks had any motive for the killing or planned it in advance. Weeks's apparently spontaneous act of following Anderson to the restroom and shooting him, as well as Weeks's denial of the incident after the fact, are consistent with, if the not the obvious product of, his mental impairments.

In sum, although there is no clear nexus between Weeks's illness and the killing, there is sufficient showing of his erratic behavior to require that his illness be considered in sentencing. As *Archer* noted, murders often present "egregious" facts, *id.* at 686, that shock the conscience. This case—an execution-style shooting—is another in that unfortunate line. In light of Weeks's serious cognitive disorders of chronic duration, however, we conclude that mental illness as a mitigator offsets the enhancing value of the factors cited by the trial court. Accordingly, we will reduce the sentence to the presumptive term of fifty years. Although the Indiana Constitution does not require comparative proportionality review, *Gambill*, 675 N.E.2d at 678, this result is consistent with the sentence imposed in other homicide cases in which the defendant had a significant history of mental illness. *Compare Archer*, 689 N.E.2d at 685 n. 7 (collecting cases in which a GBMI defendant's sentence was reduced from the maxi-

---

1. Weeks testified at the sentencing hearing that he believed his mental problems could be traced to an incident in 1987 in California in which he was kidnapped by an alien spaceship.

mum term) *with id.* at 685 n. 8 (collecting cases in which mental illness was accorded little or no mitigating weight).

## Conclusion

The conviction is affirmed and the sentence is revised to fifty years imprisonment.

SHEPARD, C.J., and SULLIVAN and SELBY, JJ., concur.

DICKSON, J., concurs except as to Part II, from which he dissents without opinion.