**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 30 2012, 9:17 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARCE GONZALEZ, JR.**
Dyer, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW R. FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KEITH ALLEN ABELL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1202-CR-77 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Thomas P. Stefaniak, Judge
Cause No. 45G04-1010-FB-96

**August 30, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Defendant Keith Allen Abell appeals following his convictions for Class B felony Attempted Rape,[1] Class B felony Attempted Criminal Deviate Conduct,[2] Class B felony Criminal Deviate Conduct,[3] Class C felony Criminal Confinement,[4] Class D felony Sexual Battery,[5] Class D felony Criminal Confinement,[6] and Class D felony Residential Entry.[7] On appeal, Abell challenges the appropriateness of his aggregate thirty-six-year executed sentence. We affirm.

## FACTS AND PROCEDURAL HISTORY

At all times relevant to this appeal, ninety-one-year-old M.S. lived independently in a duplex apartment in Lowell. Though she did nearly all of her own shopping and cleaning, M.S. occasionally relied on her neighbor, Wanda, and Wanda's son, Abell, to help her around her home.

On September 12, 2010, at a little after two in the morning, M.S. was awakened by the sound of "a few little noises that [she] was not used to hearing." Tr. p. 38. M.S. sat up in her bed and saw that her back door was open. This surprised M.S. because she was meticulous about making sure her doors were locked. After going to investigate the source of the noise,

---

[1] Ind. Code §§ 35-42-4-1 (2010) and 35-41-5-1 (2010).

[2] Ind. Code §§ 35-42-4-2 (2010) and 35-41-5-1.

[3] Ind. Code §§ 35-42-4-2.

[4] Ind. Code §§ 35-42-3-3 (2010).

[5] Ind. Code §§ 35-42-4-8 (2010).

[6] Ind. Code §§ 35-42-3-3.

[7] Ind. Code §§ 35-43-2-1.5 (2010).

M.S. turned around and saw a tall man standing in her spare bedroom. M.S. asked, "Is that you Keith?" to which the man responded "I am not your neighbor Keith." Tr. p. 39. M.S. thought this response was strange because she had not mentioned anything about "Keith" being her neighbor. Abell then grabbed M.S., turned her around, and forced her into her bedroom. Abell whispered to M.S. that he was going to "f***" her. Tr. p. 44.

After entering M.S.'s bedroom, Abell forced M.S. onto her bed and began thrusting himself at her. Abell stripped M.S. of her clothing, incontinence pad, and Depends. For approximately the next two hours, Abell fondled M.S. and groped her body parts. Abell attempted to have sex with M.S. by trying to penetrate both her anus and her vagina with his penis. Abell also stuck his erect penis in M.S.'s mouth and ejaculated on her stomach. Throughout the assault, M.S. tried to resist, but Abell held her down tightly, bruising her arms and making it difficult for her to breathe. After about two hours, Abell left.

M.S. waited approximately ten to fifteen minutes after Abell left before calling the police for fear that he would come back. M.S. stated that she had tried not to look at her attacker's face during the assault for fear that he would kill her. Police found a t-shirt on M.S.'s bedroom floor that matched the shirt that Abell had been wearing earlier that evening at a local bar. Police also found a recently burned cigarette on M.S.'s lawn that was the same brand that Abell smoked. After receiving a warrant, police recovered a pair of Abell's underwear which had both Abell's and M.S.'s DNA on it.

On October 5, 2010, the State charged Abell with one count each of Class B felony attempted rape, Class B felony attempted criminal deviate conduct, Class B felony criminal

3

deviate conduct, Class C felony criminal confinement, Class D felony sexual battery, Class D felony criminal confinement, and Class D felony residential entry. On July 27, 2011, a jury found Abell guilty as charged. On January 27, 2012, the trial court sentenced Abell to eighteen years of incarceration for the Class B felony attempted rape, attempted sexual deviate conduct, and sexual deviate conduct convictions, six years for the Class C felony criminal confinement conviction,[8] and twenty months for the Class D felony residential entry conviction. The trial court ordered that all of the sentences would run concurrently with the others, except for the eighteen-year sentence for Class B felony criminal deviate conduct, which would run consecutively to the other sentences for an aggregate term of thirty-six years. This belated appeal follows.

## DISCUSSION AND DECISION

In arguing that his thirty-six-year sentence is inappropriate, Abell contends that although the nature of his actions is such that might warrant the imposed sentence, his sentence is nonetheless inappropriate in light of his low intelligence and diminished intellectual capacities due to long-term alcohol abuse, as well as the fact that the was intoxicated when he committed the acts in question. Indiana Appellate Rule 7(B) provides that "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In considering whether a sentence is

---

[8] The conviction for Class D felony criminal confinement was merged into the Class C felony criminal confinement.

appropriate, we evaluate our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). The defendant bears the burden of persuading us that his sentence is inappropriate. *Sanchez v. State*, 891 N.E.2d 174, 176 (Ind. Ct. App. 2008). Upon review, we cannot agree with Abell's claim that his sentence is inappropriate.

Abell does not argue that his sentence is inappropriate with respect to the nature of his offenses, but rather argues that his actions were "an aberration not consistent with [his] character." Appellant's Br. p. 7. As Abell seems to acknowledge, the nature of his actions was truly heinous. Abell entered the apartment of his ninety-one-year-old neighbor in the middle of the night without permission and sexually assaulted her for nearly two hours. During the assault, Abell attempted to penetrate his victim's anus and vagina with his penis and inserted his penis in her mouth. He held his victim so tightly during the assault that her arms bruised and she had trouble breathing. Abell's actions humiliated and deeply scarred his elderly victim and stole her dignity, sense of privacy, sense of safety in her home, and independence.

With respect to his character, Abell acknowledges that he has prior criminal convictions but argues that the thirty-six-year sentence is nonetheless inappropriate. Abell's criminal history includes felony convictions for battery and intimidation, as well as misdemeanor convictions for assisting a criminal and battery resulting in bodily injury. Abell's criminal history also includes a juvenile adjudication for being "incorrigible" and at

5

least one unsuccessful termination of probation. Appellant's App. p. 130. However, despite his juvenile adjudication, criminal convictions, and prior failure to successfully complete probation, Abell argues that his character is such that his horrific acts should be considered an aberration, rather than the norm.

Abell argues that this supposed "aberration" inconsistent with his character was caused by his low intelligence, his high level of intoxication at the time he committed the instant crimes, and his diminished intellectual capacities stemming from his long-term alcohol abuse. In support, Abell points to the testimony of Dr. Robert Hanlon, a licensed psychologist specializing in the psychological abnormalities associated with brain disorders and brain damage, who testified that in his opinion, Abell had an IQ of 66 which is in the first percentile and indicates a low level of intelligence. Dr. Hanlon also opined that while he does not believe that Abell suffers from a developmental disorder, he does believe that Abell's intellectual functions have likely been compromised by high-volume alcohol abuse over time. The trial court indicated that it considered Dr. Hanlon's testimony to be "very compelling" and found Abell's low intelligence and the negative impact Abell's long-term alcohol abuse has had on his intellectual capabilities to be mitigating circumstances at sentencing. Tr. p. 499. The trial court also considered the fact that Abell "in all likelihood was intoxicated" at the time he committed the instant crimes as a mitigating circumstance.

However, notwithstanding these mitigating circumstances, the trial court determined that the nature of Abell's actions, Abell's criminal history, and the fact that Abell had established a position of trust with his victim by helping her around her home and even

6

helping to save her life on a prior occasion, warranted a thirty-six-year sentence. In imposing this sentence, the trial court again acknowledged that even though Abell's cognitive abilities are diminished, he seems able to function well in his day-to-day life.

Abell also points to his victim's testimony that, up until the time of the assault, he had been a good neighbor, and that on one occasion, had even helped to save her life. While being a "good neighbor" and helping to save someone's life is honorable, we cannot say that such acts, without more, are such that would convince us that Abell's criminal actions were aberrations inconsistent with an otherwise good character. Abell's prior criminal convictions indicate that he has a history of committing violent acts, including misdemeanor and felony convictions for battery resulting in bodily injury, and prior leniency has not deterred future criminal acts. Abell was clearly not being a "good neighbor" when he entered his victim's home and sexually assaulted her for nearly two hours. Abell was not even deterred from committing his criminal acts when his victim recognized him, but rather attempted to fool his victim by saying "I am not your neighbor Keith." Tr. p. 39.

Furthermore, to the extent that Abell argues that his sentences for Class B felony attempted rape and Class B felony criminal deviate conduct should have been ordered to run concurrently rather than consecutively, we disagree. In making this claim, Abell relies on the Indiana Supreme Court's opinions in *Archer v. State*, 689 N.E.2d 678 (Ind. 1998) and *Weeks v. State*, 697 N.E.2d 28 (Ind. 1998). However, we note that in both *Archer* and *Weeks*, the defendants suffered from serious mental illness such as anti-social disorder, intermittent explosive disorder, schizophrenia, schizo-affective disorder, and bipolar disorder. Abell,

7

however, does not suffer from any serious mental illness or developmental disorder. In addition, while Dr. Hanlon testified that Abell suffered from low intelligence, Dr. Hanlon further testified that Abell was nonetheless capable of distinguishing right from wrong.

Again, Abell entered his ninety-one-year-old neighbor's home without permission and sexually assaulted her for nearly two hours. Abell does not dispute the depraved and heinous nature of his actions, but rather tries to explain them away as being the product of his low intelligence and his long-term alcohol abuse. Upon review, however, we are unconvinced by Abell's claim that his actions were aberrations inconsistent with his otherwise good character. In light of the depraved and heinous nature of his actions, we conclude that the thirty-six-year sentence imposed by the trial court is wholly appropriate.

The judgment of the trial court is affirmed.

ROBB, C.J., and BAKER, J., concur.