## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 01 2015, 10:03 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Marce Gonzalez, Jr.
Dyer, Indiana

ATTORNEYS FOR APPELLEE

Gregory Zoeller
Attorney General of Indiana
Indianapolis, Indiana

Cynthia L. Ploughe
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jason Lee DeGroot,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | October 1, 2015<br><br>Court of Appeals Case No.<br>45A03-1412-CR-457<br><br>Appeal from the Lake County<br>Superior Court<br><br>The Honorable Diane Ross<br>Boswell<br><br>Trial Court Cause No.<br>45G03-1111-MR-7 |

**Altice, Judge.**

### Case Summary

Following his plea of guilty to Voluntary Manslaughter[1] as a class A felony, Jason Lee DeGroot was sentenced to forty years in the Department of Correction. DeGroot now appeals, contending that his sentence is inappropriate pursuant to Indiana Appellate Rule 7(B).

We affirm.

Following the death of his wife in 2010, DeGroot resided in Hammond, Indiana with his ten-year-old son, Jason DeGroot, Jr. (Jason), and a family friend, Doretta Gonzalez. Sometime between 8 a.m. and 8 p.m. on November 14, 2011, DeGroot shot Jason in the back as he lay face-down in bed. Jason died as a result of his injuries. The following afternoon, DeGroot spoke with Gonzalez on the telephone. Shortly thereafter, DeGroot shot himself in the chest and then climbed into bed with his already deceased son. Gonzalez arrived home a short time later and discovered them both. A Ouija board was found in the room and a copy of DeGroot's wife's obituary was posted on the wall above the bed.

DeGroot survived his injuries, and on November 29, 2011, the State charged him with Jason's murder. On September 16, 2014, the State filed an amended information charging DeGroot with Count I, murder, and Count II, voluntary manslaughter. On the same date, DeGroot entered into a plea agreement

---

[1] *See* Ind. Code § 35-42-1-3. We note that, effective July 1, 2014, this offense was reclassified as Level 2 felony. Because DeGroot committed this offense prior to that date, it retains its prior classification as a class A felony.

whereby he would plead guilty but mentally ill to voluntary manslaughter and the State would dismiss the murder charge. The plea agreement left sentencing to the discretion of the trial court, except that the minimum sentence would be thirty-two years. The trial court accepted the plea agreement and sentenced DeGroot to a term of forty years executed in the Department of Correction.

[5] DeGroot contends that his sentence is inappropriate in light of the nature of his offense and his character. Article 7, section 4 of the Indiana Constitution grants our Supreme Court the power to review and revise criminal sentences. *See Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014), *cert. denied*, 135 S.Ct. 978 (2015). Pursuant to Ind. Appellate Rule 7, the Supreme Court authorized this court to perform the same task. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Per App. R. 7(B), we may revise a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Inman v. State*, 4 N.E.3d 190, 203 (Ind. 2014) (quoting App. R. 7). "Sentence review under Appellate Rule 7(B) is very deferential to the trial court." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). DeGroot bears the burden on appeal of persuading us that his sentence is inappropriate. *See id.*

[6] The determination of whether we regard a sentence as inappropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Bethea v. State*, 983 N.E.2d 1134, 1145 (Ind. 2013) (quoting *Cardwell*, 895 N.E.2d at 1224). Moreover, "[t]he principal role of such review is to attempt to

leaven the outliers." *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013). It is not our goal in this endeavor to achieve the perceived "correct" sentence in each case. *Knapp*, 9 N.E.3d at 1292. Accordingly, "the question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008) (emphasis in original).

[7] In order to assess the appropriateness of a sentence, we first look to the statutory range established for the classification of the relevant offense. DeGroot was convicted of class A felony voluntary manslaughter. The advisory sentence for a class A felony is thirty years, with the minimum and maximum sentence being twenty and fifty years, respectively. Ind. Code § 35-50-2-4. DeGroot's plea agreement, however, called for a minimum sentence of thirty-two years. Thus, DeGroot's forty-year sentence was eight years above the minimum set forth in his plea agreement, but ten years short of the maximum. On appeal, DeGroot argues that in light of his mental illness and lack of criminal history, he should have received the minimum sentence allowed under the plea agreement.

[8] The nature of DeGroot's offense is disturbing, to say the least. DeGroot shot his ten-year-old son in the back as he lay face-down in bed. After doing so, DeGroot did not call the police or seek medical attention for Jason. Instead, he remained in the home until the next day, when he shot himself in the chest and then climbed into bed with Jason's body. Gonzalez arrived home shortly thereafter and discovered DeGroot and Jason's body. DeGroot's actions were

the ultimate violation of his position of utmost trust as Jason's only surviving parent, and particularly heinous in light of Jason's young age.

[9] While we acknowledge that DeGroot was diagnosed with depression and an anxiety disorder following his arrest, he has not established that his mental illness was significant enough to warrant a revision of his sentence. In *Weeks v. State*, our Supreme Court set out a list of factors bearing on the mitigating weight to be attributed to the defendant's mental illness. 697 N.E.2d 28, 30 (Ind. 1998). "These factors include: (1) the extent of the defendant's inability to control his or her behavior due to the disorder or impairment; (2) overall limitations on functioning; (3) the duration of the mental illness; and (4) the extent of any nexus between the disorder or impairment and the commission of the crime." *Id.* DeGroot has not directed our attention to any evidence suggesting that his ability to control his behavior was impaired due to his depression and anxiety, nor has he established that his functioning was limited in any way. Indeed, both Gonzalez and DeGroot's mother reported that DeGroot was behaving normally the weekend before he killed Jason. Nor has DeGroot established that he suffered from any longstanding mental illness— rather, the record establishes that, aside from suffering attention-deficit disorder as a child, DeGroot had never been diagnosed with any mental illness prior to committing the instant offense.[2] While DeGroot's actions may have been

---

[2] The cases upon which DeGroot relies in support of his argument that his mental illness warrants a reduction of his sentence are easily distinguishable from the case before us. *See, e.g., Archer v. State*, 689 N.E.2d 678, 686 (Ind. 1997) (sentence reduced where defendant's mental illness was "well-documented and

motivated to some extent by his depression over the loss of his wife, the trial court gave DeGroot's mental illness due consideration when it imposed a sentence ten years below the maximum.

[10] With respect to his character, DeGroot argues that prior to the instant offense, he had been a caring and attentive father to Jason. DeGroot's final actions toward his son, however, undermine this claim. We also note that DeGroot was suffering from some degree of mental illness at the time of the offense, and that he had previously lived a law-abiding life and had been gainfully employed. DeGroot's violation of his position of trust and his failure to seek medical attention for Jason after the shooting, however, reflect negatively on his character. On balance, we cannot conclude that his forty-year sentence for class A felony voluntary manslaughter is inappropriate.

[11] Judgment affirmed.

[12] Baker, J., and Najam, J., concur.

---

long-standing" and "limit[ed] his ability to function"); *Gambill v. State*, 675 N.E.2d 668, 678 (Ind. 1996) (sentence reduced where overwhelming evidence was presented that defendant was gravely mentally ill at the time of the offense).