## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 19 2015, 8:46 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Brian J. May<br>South Bend, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana |
| | Eric P. Babbs<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Telly S. Bracey,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | November 19, 2015<br><br>Court of Appeals Case No.<br>71A04-1506-CR-621<br><br>Appeal from the St. Joseph<br>Superior Court<br><br>The Honorable J. Jerome Frese,<br>Judge<br><br>Trial Court Cause No.<br>71D03-1305-FB-66 |

**Brown, Judge.**

[1] Telly S. Bracey appeals his conviction for attempted robbery as a class B felony. Bracey raises one issue which we revise and restate as whether the trial court clearly erred in rejecting his insanity defense and finding him guilty of attempted robbery. We affirm.

## Facts and Procedural History

[2] On May 11, 2013, Larry Clifford took the South Shore train to South Bend and noticed that Bracey was also onboard. After Clifford exited the train, Bracey approached him and asked to borrow his phone, explaining that his phone was not working and that he could not "get ahold of [his] ride." Transcript at 23. After using the phone, Bracey asked Clifford for a ride, offering him money for gas, and Clifford agreed. The men entered Clifford's pickup truck, and as they started for Bracey's grandmother's house, they had a seemingly normal conversation about Clay High School, the weather, and Bracey's need for a ride, but then Bracey pulled out a gun and said: "take me to your bank." *Id.* at 26. Clifford observed a police cruiser and pulled up next to it, attracting the attention of Officer Joseph Leszczynski of the South Bend Police Department. Bracey reacted by throwing the gun onto the floorboard of Clifford's truck, and then tried to exit the truck but was blocked from doing so by Officer Leszczynski's police cruiser, and was detained. Other officers arrived and found a handgun on the floorboard of Clifford's truck, with its hammer pulled back and four live .38 caliber rounds inside.

[3] On May 13, 2013, the State charged Bracey with attempted robbery as a class B felony. On November 20, 2013, Bracey filed a motion for evaluation requesting

that he be evaluated to determine his ability to understand the consequences of statements made to investigators. The next day the court ordered mental competency examinations to determine whether Bracey could understand the proceedings and assist in the preparation of his defense, appointing Dr. Jennifer Cummings, Ph.D. and Dr. Evert VanderStoep, M.D. The court received the reports from the doctors on July 9, 2014. Dr. Cummings noted that Bracey stated he heard voices from his deceased female cousin and opined that Bracey was competent to proceed to trial. Dr. VanderStoep's report noted that Bracey stated he was in a conversation with his deceased female cousin at the time of the attempted robbery and that he was "following a movie script in which a gun was pointed at a victim and he learned 'you get money that way.'" Appellant's Supplemental Appendix at 4. Dr. VanderStoep noted his belief that "[t]he balance of evidence points to understanding he was insane at the time of the crime, and he is unable to assist an attorney in his defense." *Id.* at 5. He also diagnosed Bracey with Moderate Mental Retardation and with simple Schizophrenia.

[4] On January 31, 2014, the court ordered a third mental competency examination by Dr. Linda Monroe, Ph.D. and later issued an order appointing her to further evaluate whether, as a result of a mental disease or defect, Bracey was unable to appreciate the wrongfulness of his conduct at the time he attempted to rob Clifford. On April 4, 2014, Dr. Monroe filed her report noting that "[a]lthough it at first seems unbelievable, Mr. Bracey was extremely consistent about his report that he constantly experiences auditory and visual hallucinations of his

cousin who was killed in 2009," including hearing those voices directing him what to do during the attempted robbery. *Id.* at 7. Dr. Monroe's report concluded that, based on those symptoms, Bracey was legally insane at the time of the crime and that he was not currently competent to stand trial.[1]

[5] On April 17, 2014, the court held a competency hearing and reviewed the reports, issued a commitment order finding that Bracey lacked the ability to understand the proceedings or assist in the preparation of his defense, and committed him to the Indiana Division of Mental Health. On June 24, 2014, Bracey was admitted to Logansport State Hospital. At the time of his admission, "he was well-groomed and expressed logical and pertinent thinking," and "[h]e described experiencing some hallucinations of a deceased cousin's voice beginning several years ago but that [those] experiences had ceased approximately three months before his hospitalization at Logansport." Transcript at 53. Based upon his history and on the previous reports from Dr. Monroe and Dr. VanderStoep, Bracey's admitting physician diagnosed him with major depression disorder with psychotic features.

[6] In the days following his admission, however, concerns arose regarding whether Bracey actually suffered from an underlying psychotic disorder or instead had feigned his symptoms of mental illness. Approximately four days after his admission, he was documented as saying, "my cousin told me that if I

---

[1] Although these reports were not formally admitted into evidence at trial, the court stated that it would consider the reports, to which neither party objected.

pled insanity, I wouldn't go to jail." *Id.* at 54. Within the first week of his admission, Bracey explained to his attending psychiatrist that he had not previously experienced auditory hallucinations or heard voices and "largely admitted to feigning insanity to avoid prison and to be sent to a mental hospital instead . . . ." *Id.* He also told hospital staff that he "just played crazy to get in here." *Id.* at 67. Throughout his hospitalization, he "remained objectively free from symptoms of a major mental disorder," and "[h]e continued to display logical and pertinent thinking . . . ." *Id.* at 55.

[7] On August 22, 2014, Dr. Douglas Morris, M.D., met with Bracey to complete a formal competency review at the hospital, and diagnosed him with a history of malingering and with antisocial personality disorder. On August 25, 2014, based on Dr. Morris's evaluation, Logansport State Hospital filed correspondence reporting that Bracey was presently competent to stand trial and requesting that the court direct the sheriff to return him to the county jail.

[8] On January 15 and February 9, 2015, the court held a bench trial at which evidence consistent with the foregoing was presented. At the outset, Bracey's counsel stipulated to the facts of the attempted robbery and that the police reports would be admissible regarding the facts of the crime, and stated that "the only issue in this case is whether or not Mr. Bracey was sane at the time of the offense." *Id.* at 15. Dr. Morris testified that, in his opinion, Bracey had "feigned symptoms of mental illness . . . to avoid prosecution and gain access to a mental hospital" but that "once here he decided that was not the tact that he wished to take and therefore did not further feign these symptoms or engage in

efforts that would lead to prolonged hospitalization." *Id.* at 64.  After Dr. Morris's testimony, Dr. Monroe was called as a witness by the court, and she acknowledged that in her March 2014 report she had found Bracey to be insane at the time of the offense based upon his claimed visual and auditory hallucinations about his cousin.  Dr. Monroe testified that "if it weren't for the fact that [Bracey] was describing being instructed to do this by an hallucinatory figure, [she] would have thought he was not insane," that based on the information from Dr. Morris following Bracey's hospitalization she had changed her opinion regarding Bracey's sanity at the time of the crime, and that she believed that Bracey "was not legally insane at the time of the crime." *Id.* at 91, 99.

[9] The court also called Dr. VanderStoep who testified that at the time he evaluated Bracey he "had a hard time deciding whether or not [Bracey] was actually following command hallucinations" or whether Bracey "was trying to create something." *Id.* at 110-111.  Dr. VanderStoep testified that, after reviewing Dr. Morris's report, he was of the opinion that any hallucinations Bracey may have experienced at the time of the crime were not command hallucinations and that Bracey could appreciate the wrongfulness of his conduct.

[10] The court found that Bracey "could appreciate the wrongfulness of his conduct at the time of the offense," and found him guilty as charged.  Appellant's Appendix at 48.  On March 10, 2015, Bracey was sentenced to fifteen years,

with six years executed in the Department of Correction ("DOC") and nine years suspended.

## Discussion

[11] The issue is whether the court clearly erred in rejecting Bracey's insanity defense. To be convicted of a criminal offense, the State must prove each element of the offense beyond a reasonable doubt. *Myers v. State*, 27 N.E.3d 1069, 1074-1075 (Ind. 2015) (citing Ind. Code § 35-41-4-1(a) (2014)), *reh'g denied*. "Criminal responsibility can be avoided if the defendant can successfully raise and establish the 'insanity defense.'" *Id.* at 1075 (citing *Galloway v. State*, 938 N.E.2d 699, 708 (Ind. 2010), *reh'g denied*; Ind. Code § 35-41-3-6(a)). To successfully assert this defense, an individual must prove by a preponderance of the evidence: "(1) that he or she suffers from a mental illness and (2) that the mental illness rendered him or her unable to appreciate the wrongfulness of his or her conduct at the time of the offense." *Id.* (quoting *Galloway*, 938 N.E.2d at 708). Thus, proof of mental illness alone is insufficient. *Id.* (citing *Galloway*, 938 N.E.2d at 708 (citing *Weeks v. State*, 697 N.E.2d 28, 29 (Ind. 1998))).

[12] It is for the trier of fact to determine whether the defendant appreciated the wrongfulness of his conduct at the time of the offense. *Id.* (citing *Thompson v. State*, 804 N.E.2d 1146, 1149 (Ind. 2004)). The defendant is in the position of having to appeal a negative judgment. *Id.* A reviewing court "will reverse *only when the evidence is without conflict* and *leads only to the conclusion* that the defendant was insane when the crime was committed." *Id.* (quoting *Thompson*,

804 N.E.2d at 1149). The reviewing court "will not reweigh the evidence or assess the credibility of witnesses but will consider only the evidence most favorable to the judgment and the reasonable and logical inferences to be drawn therefrom." *Id.* (quoting *Thompson*, 804 N.E.2d at 1149 (citing *Metzler v. State*, 540 N.E.2d 606, 608-609 (Ind. 1989))).

[13] Bracey argues that Dr. Moore rendered an opinion only regarding Bracey's competency to stand trial and did not address the issue of insanity at the time of the offense, and that accordingly it was error for the other doctors to change their opinions regarding whether he was sane at the time of the offense based thereon. He asserts that Dr. Moore did not offer any insight on Bracey's ability to appreciate the wrongfulness of his conduct and that claiming to be "faking it may be very well consistent with a troubled mind at the time of the incident." Appellant's Brief at 9. The State argues that the evidence is without conflict that Bracey was legally sane at the time of the offense. It asserts that Bracey's arguments are merely a request to reweigh the evidence.

[14] The evidence presented reveals that, although Dr. VanderStoep and Dr. Monroe had previously filed reports with the court stating that they believed Bracey was insane when he attempted to rob Clifford, they both changed their diagnoses based upon Bracey's behavior and statements while at Logansport State Hospital as reported by Dr. Morris. Specifically, Dr. Morris testified that Bracey had stated while at the hospital that "my cousin told me that if I pled insanity, I wouldn't go to jail," that Bracey "largely admitted to feigning insanity to avoid prison and to be sent to a mental hospital instead," and that he

told hospital staff that he "just played crazy to get in here." *Id.* at 54, 67. Dr. Morris further testified that Bracey "remained objectively free from symptoms of a major mental disorder," and "[h]e continued to display logical and pertinent thinking . . . ." *Id.* at 55. Dr. Monroe further testified that "if it weren't for the fact that [Bracey] was describing being instructed to do this by an hallucinatory figure, [she] would have thought he was not insane" and that she believed that Bracey "was not legally insane at the time of the crime." *Id.* at 91, 99. Also, Dr. VanderStoep testified that he struggled at the time he filed his report whether or not Bracey was faking his command hallucinations and that, after reviewing Dr. Morris's report, he was of the opinion that any hallucinations Bracey may have experienced at the time of the crime were not command hallucinations and that he could appreciate the wrongfulness of his conduct.

[15] We are not persuaded that it was error for the court to consider the facts that Dr. Monroe and Dr. VanderStoep changed their medical opinions based upon the observations of Bracey at Logansport State Hospital and especially Bracey's admissions while there that he feigned insanity in order to avoid prison time. We cannot say that the evidence is without conflict and leads only to the conclusion that Bracey was insane at the time he attempted to rob Clifford. Bracey's arguments to the contrary are merely a request to reweigh the evidence or judge the credibility of the witnesses, which we may not do. *See Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We conclude that the court did not clearly err when it rejected Bracey's insanity defense.

## Conclusion

[16] For the foregoing reasons, we affirm Bracey's conviction for attempted robbery.

[17] Affirmed.

Riley, J., and Altice, J., concur.