FILED

Jun 12 2023, 11:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Victoria Bailey Casanova | Theodore E. Rokita |
| Casanova Legal Services | Indiana Attorney General |
| Indianapolis, Indiana | Indianapolis, Indiana |
| | |
| | Steven J. Hosler |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Harrison Raymond Addis, | June 12, 2023 |
| *Appellant-Defendant,* | Court of Appeals Case No. 22A-CR-2645 |
| v. | Appeal from the Noble Circuit Court |
| State of Indiana, | The Honorable Michael J. Kramer, Judge |
| *Appellee-Plaintiff* | Trial Court Cause No. 57C01-2104-F4-8 |

**Opinion by Judge May**
Judges Mathias and Bradford concur.

**May, Judge.**

[1] Harrison Raymond Addis ("Addis") appeals his aggregate nine-year sentence following his convictions of two counts of Level 4 felony sexual misconduct with a minor[1] and one count of Level 5 felony sexual misconduct with a minor.[2] Addis raises a single issue for review, which we restate as whether the trial court abused its discretion when it did not find his autism spectrum disorder ("ASD") diagnosis to be a mitigating circumstance at sentencing. We affirm.

## Facts and Procedural History

[2] Fourteen-year-old K.B. lived with her father, S.B., and father's girlfriend, C.S. K.B. also spent time with her mother, who lived with K.B.'s grandmother, aunt, and cousin, Addis. When K.B. stayed with her mother on July 8, 2020, July 20, 2020, and July 30, 2020, Addis took K.B. into his room and engaged in sexual acts with K.B. Addis, who was twenty-three years old at the time, knew K.B. was only fourteen years old.

[3] In August 2020, C.S. found letters in a notebook while cleaning K.B.'s room. The letters were "boyfriend and girlfriend kinda notes back and forth and it said to Harrison at the bottom it said your girlfriend [K.B.]." (Tr. Vol. 2 at 124.) A few days later, C.S. "went further in depth and went looking for that notebook" and "found some disturbing things," including a letter by Addis that listed sex

---

[1] Ind. Code § 35-42-4-9(a).

[2] Ind. Code § 35-42-4-9(b)(1).

acts he wanted to perform with K.B. (*Id.*) K.B.'s father reported the letters to the police, who began an investigation. During a forensic interview on August 21, 2020, K.B. disclosed the sexual conduct that had occurred between her and Addis.

[4] On April 9, 2021, the State charged Addis with two counts of Level 4 felony sexual misconduct with a minor and one count of Level 5 felony sexual misconduct with a minor. Questions arose regarding Addis's sanity and competence to stand trial, so the trial court appointed Dr. Stephen Ross and Dr. Rebecca Mueller to conduct evaluations of Addis. Dr. Ross did "not see a lack of intelligence" and found that Addis's responses were "indicative of clinical narcissism." (App. Vol. 2 at 60.) Addis told Dr. Ross that he waited until K.B. was fourteen to begin a sexual relationship because he believed fourteen was the age of consent. Dr. Ross found Addis to be sane and competent to stand trial. During Addis's evaluation with Dr. Mueller, Addis admitted acts of sexual misconduct with K.B. going back to June 8, 2019. Dr. Mueller determined that Addis was competent to stand trial, but "unable to appreciate the wrongfulness of his conduct at the time of the alleged offense due to suffering from a Pervasive Development Disorder, Autism. He was insane." (*Id.* at 70.)

[5] On December 13, 2021, Addis's attorney requested a third psychological evaluation because the first two evaluators had different opinions. The trial court appointed Dr. James Cates. During Addis's evaluation with Dr. Cates, Addis blamed K.B. for the incidents because "he felt compelled to agree to her advances." (*Id.* at 75.) Addis told Dr. Cates that he believed the age of consent

was sixteen and he knew K.B. is fourteen, but he "argued that the law was unfair." (*Id.* at 78.) Dr. Cates found Addis to be "sane . . . at the time of the commission of the alleged crime(s) and competent to stand trial." (*Id.*)

[6] The trial court held a jury trial on September 14 and 15, 2022. A jury found Addis guilty of all three charges, and the trial court entered the convictions accordingly. On October 17, 2022, the trial court held a sentencing hearing. As aggravators, the trial court found that Addis was "grooming [K.B.] over a number of years" and it was a "relationship with the position of trust." (Tr. Vol. 2 at 215.) The trial court also noted Addis lacked remorse and "blamed [K.B.] for [his] crime." (*Id.*) Further, the court was concerned with Addis's "full intention to continue this relationship even though she's [his] first cousin." (*Id.*) As mitigators, the trial court found Addis's lack of criminal history and cooperation with law enforcement during interviews at his home and the jail. The trial court found "the aggravating factors outweigh the mitigating factors." (*Id.*) The court-imposed sentences of nine years for each of the Level 4 felonies[3] and four years for the Level 5 felony,[4] and it ordered all three sentences served concurrently.

---

[3] "A person who commits a Level 4 felony shall be imprisoned for a fixed term of between two (2) and twelve (12) years, with the advisory sentence being six (6) years." Ind. Code § 35-50-2-5.5.

[4] "A person who commits a Level 5 felony (for a crime committed after June 30, 2014) shall be imprisoned for a fixed term of between one (1) and six (6) years, with the advisory sentence being three (3) years." Ind. Code § 35-50-2-6.

## Discussion and Decision

[7] Addis argues the trial court abused its discretion at sentencing because it did not recognize his ASD as a mitigating circumstance. A trial court may abuse its discretion at sentencing by: (1) failing to enter a sentencing statement, (2) entering a sentencing statement that includes reasons for imposing a sentence that are unsupported by the record, (3) leaving out factors advanced for consideration and supported by the record, or (4) providing reasons that are improper as a matter of law. *Anglemyer v. State,* 868 N.E.2d 482, 490-91 (Ind. 2007), *clarified on reh'g* 875 N.E.2d 218 (2007) (regarding treatment of guilty plea as a mitigator). To support the allegation that the trial court failed to find a valid mitigating circumstance, a defendant must demonstrate that "mitigating evidence is both significant and clearly supported by the record[.]" *Id*. at 493.

[8] We begin our analysis by noting that, in argument at the sentencing hearing, Addis did not request his ASD be considered as a mitigating circumstance. Typically, failure to assert the existence of a mitigator before the trial court results in waiver of that mitigator on appeal. *See Wells v. State*, 836 N.E.2d 475, 479 (Ind. Ct. App. 2005) (waiving argument regarding failure to find mitigator when mitigator was not presented to the trial court), *trans. denied*. However, Addis did present testimony at sentencing from his mother, who discussed the impact ASD had on Addis's life and asked the court to show leniency on Addis. Given that fact and the necessity of competency evaluations of Addis prior to trial, we decline to waive this issue for appeal. *See Roberts v. Cmty. Hospitals of Indiana, Inc.,* 897 N.E.2d 458, 469 (Ind. 2008) (appellate court prefers to address

issues on the merits when possible); *and see Anglemyer*, 875 N.E.2d at 220 (argument that trial court abused its discretion by not finding guilty plea as a mitigator was not waived for appeal, despite not being argued at sentencing, because "a sentencing court is inherently aware of" the guilty plea).

[9]     Both Addis and the State direct our attention to a test first applied in *Weeks v. State*, 697 N.E.2d 28 (Ind. 1998). In *Weeks*, our Indiana Supreme Court was asked to determine whether a trial court abused its discretion when it failed to find a mitigator in Weeks's mental illness after he was "found guilty but mentally ill." *Id.* The Court set out a four-factor test to evaluate whether a trial court erred by not finding mental illness to be a mitigator at sentencing.[5] *Id.* at 31. We must consider "(1) the extent of the defendant's ability to control his or her behavior due to the disorder or impairment; (2) overall limitations on functioning; (3) the duration of the mental illness; and (4) the extent of any nexus between the disorder or impairment and the commission of the crime." *Weeks*, 697 N.E.2d at 31.

[10]    As to the first factor of the *Weeks* test, the extent to which Addis had control over his behavior, Addis was able to control his behavior to some extent as evidenced by the fact that he waited to engage in a sexual relationship with K.B. until she was fourteen years old because "he believed that 14 years of age

---

[5] Addis notes ASD is a developmental disability, rather than a mental illness, and questions the appropriateness of applying the test from *Weeks*, (Appellant's Br. at 12), but we believe application of the *Weeks* test is appropriate in this circumstance because concerns about Addis's functioning necessitated pre-trial competency evaluations.

was the age of consent." (App. Vol. 2 at 53.) Despite telling Dr. Ross that he believed the age of consent was 14, Addis told Dr. Cates that he "understood the age of consent as 16 in the state of Indiana, and further understood that his sexual partner was 14 years old." (*Id.* at 78.) Addis further disclosed to Dr. Cates that "[h]e recognized that the behavior was wrong due to her age, but chose to [sic] engage in it anyway." (*Id.* at 75.) "[Addis] argued that the law was unfair" and that he is being treated unjustly because, "[a]s the age of consent is 16, and he was sexually involved with a 14-year-old, the consequences he is facing are not in proportion to the chronological age difference." (*Id.* at 78.)

[11] As to the second *Weeks* factor, Addis's overall limitations in functioning, Dr. Cates reported Addis has "high verbal intelligence, but . . . difficulty with empathy and . . . struggle[s] to understand basic interpersonal etiquette." (App. Vol. 2 at 78.) Dr. Ross reported that Addis is "immature and self-defeating with chronically poor judgment and feelings of inferiority[,]" (*id.* at 55), but Dr. Ross did not attribute those characteristics to Addis's ASD. Addis was originally diagnosed with Asperger's Disorder, but Dr. Cates explained that "was a previous diagnosis used for high-functioning persons on the autism spectrum that is no longer recognized." (*Id.*) Addis dropped out of school in eighth grade due not to limitations but to his belief that "it was no longer important for him to go to school[,]" (*id.* at 52), and he quit work and remains unemployed due to his belief that he is "unfit to work[.]" (*Id.*) Addis's IQ was tested twice as part of his evaluations before trial and he scored "average to

above average performance on IQ testing" on the first test, (*id*. at 60), and "in the High Average to Superior ranges of intelligence" on the second test. (*Id.* at 76.)

[12]     Regarding the third factor in *Weeks* – the duration of Addis's condition – Addis was diagnosed with ASD at age four, and all three doctors performing examinations of Addis herein confirmed the diagnosis of ASD.

[13]     Finally, regarding the fourth *Weeks* factor, the nexus between Addis's condition and his criminal actions, there is no clear nexus. Addis made a conscious decision to wait until K.B. was fourteen because he believed that was the age of consent. After his arrest, Addis repeatedly blamed K.B., not himself or his ASD. He told Dr. Cates that K.B. approached him and he "felt compelled to agree to her advances." (App. Vol. 2 at 75.) Dr. Ross's report states that "simply having met some of the criteria for an autistic disorder does not qualify as having a severe mental disorder that impairs perception." (*Id.*) Dr. Mueller reported Addis was able to "state the arresting charges and explain the meaning of the offenses. He was able to describe the level of the defense [sic] and estimate the time served if guilty." (*Id.* at 65-66.) Addis told Dr. Mueller that he believed his "best plan of defense was his mental illness." (*Id.* at 65.) Dr. Mueller determined Addis was competent to stand trial but was "unable to appreciate the wrongfulness of his conduct" due to his ASD. (*Id.* at 70.) Neither Dr. Ross nor Dr. Cates found Addis to be insane at the time of the alleged crime due to his ASD.

We consider conflicting evidence most favorably to the trial court's decision. *Silvers v. State*, 114 N.E.3d 931, 936 (Ind. Ct. App. 2018). Although Addis's ASD could have been seen as a mitigating circumstance, the divergent evidence in the record did not conclusively demonstrate ASD made it impossible for Addis to control his actions or behavior. Nor was there a nexus between his ASD and his crimes against K.B. Therefore, the trial court did not abuse its discretion when it did not find Addis's ASD to be a mitigating circumstance. *See*, *e.g.*, *Corralez v. State*, 815 N.E.2d 1023, 1026 (Ind. Ct. App. 2004) (holding defendant's mental illness was not a mitigating factor because there was no nexus between the defendant's mental health and the crime and "no indication that his mental health was responsible for his decision-making process on the day in question").

## Conclusion

Due to the divergent evidence from mental health professionals who evaluated Addis, we conclude the trial court did not abuse its discretion when it failed to identify Addis's ASD as a mitigating factor during sentencing. Accordingly, we affirm.

Affirmed.

Mathias, J., and Bradford, J., concur.